JOHN TOLSON, *et al vs.* HENRY TOLSON, *et al.*—*Dec.* 1838.

If the language of a will is uncertain, as to the person designed to take, or as to the thing designed to be given, the court cannot enforce it without adding a devisee or legatee not named, or describing property not described in the will.

In a devise to the seven sons of the testator, with a request that they should take care of their brother *John Tolson* and his *family*, it was *held*, upon a bill filed by *John* and his children, that the term "*family*" did not designate the persons intended by the testator, with sufficient accuracy; and that as to those who were contemplated by that term, the devise must fail.

But the failure of the will in that respect, did not, however, affect the devise in favour of *John*, and that the proper and necessary means of securing the execution of the testator's intention to provide a maintenance for him, was to consider the amount necessary for that purpose, a charge on the land devised to the seven sons, and to make them trustees for *John*.

APPEAL from *Chancery*.

THIS was a bill filed on the 12th March, 1834, by *John Tolson* and *Eleanor* his wife, and their adult and infant children, alleging that *Francis Tolson*, the father of *John*, and the grandfather of the children of *John* and *Wife*, who died in the year 1824, by his last will and testament, gave to all his children, except his son *John* the complainant, a specified portion of his estate, that with the exception of a small portion of his real estate, which the said testator devised to his friend and son-in-law, George Semmes, upon condition the said testator devised to his sons *Henry, Edward, William Alfred, Thomas R., Alexander H.* and *George S. Tolson*, all his large and valuable real estate, share and share alike, and requested his said seven sons aforesaid, to take care of their brother *John* and his family ; thereby creating a trust in said seven sons, for the benefit of your orator, and making it obligatory upon them, in consideration of the benefits and advantages which they were authorized to receive under said will, and which they have assumed to take under the will, to afford and extend to the complainant and his family a competent maintenance and support during their lives, and so long as their necessities should require. The bill then alleged that

160      CASES IN THE COURT OF APPEALS

Tolson, et al vs. Tolson, et al.—1838.

the said seven sons, though they had accepted and taken a large estate under their father's will, refused to allow the complainant and his family, then in abject poverty, any support or relief. Prayer for *subpœna* against the said sons, for special and general relief.

The will of *Francis Tolson*, exhibited with the bill, contained among others the following clause:

ITEM.—I give and devise to my sons *Henry Tolson, Edward Tolson, William Tolson, Alfred Tolson, Thomas R. Tolson, Alexander H. Tolson,* and *George Semmes Tolson,* their heirs and assigns, to be equally divided between them, share and share alike, all the rest and residue of my estate, real, personal and mixed; I request my seven sons above named, to take care of their brother *John Tolson* and his family, also the children of my late grandaughter *Ann Middleton,* and my grandson *Arthur A. Callis.*

The defendant appeared and demurred specially to the said bill of complaint, and assigned the following causes of demurrer:

1. That the subject of the suit, and the relief and discovery sought, were not within the jurisdiction of *any* court of law or equity.

2. That the clause relied on in the will of Francis Tolson, did not create a trust in favour of the persons therein referred to, or any of them.

3. That neither the complainants nor any of them have any interest in the real property devised to the defendants, and have not by their bill made such a case as entitles them to relief or equity.

At March, 1837, the demurrer coming on to be heard, the Chancellor, (BLAND,) dismissed the bill with costs, being of opinion that the request of the testator in favour of his son *John Tolson and his family,* was so indefinite and uncertain, that it could not be considered as the foundation of any trust or claim as set forth in the bill of complaint.

From this decree the complainants appealed.

The cause was argued before BUCHANAN, Ch. J., STE-PHEN, ARCHER, CHAMBERS and SPENCE, Judges.

PRATT, for the appellants:

This question is a new one in Maryland, and turns upon the construction of a single clause of Francis Tolson's will, viz. the request of the testator that his seven sons should take care of their brother *John* and his family.

The intent of the testator is to be regarded.  The court will execute it.   The testator meant something by this devise.  He had made provision for his other sons, and requests them to take care of their brother *John*.   The bill is demurred to.   Hence its allegations are admitted.   *John* and his family are destitute.  Then what was the design of the testator in making this bequest?   Not the mere form of a charity; but the devise confessed the pecuniary ability to take care of his brother—to keep him from want—to furnish the necessaries of life, and not throw him on the cold charity of the world.

Words of request, desire, hope, are modes of devising, and accompanied with sufficient property, are construed to be a trust.   *Jer. Eq. Jurisp.* 98.   Three things must concur; the object must be certain; the subject must be certain; these words of desire and recommendation in a will, are construed always as a trust.   A duty coupled with property sufficient to discharge that duty, creates a trust.   The words here are sufficient for that purpose.   *Tibbitts vs. Tibbitts,* 19 *Ves. J.* 656.   *Hill vs. Bishop of London,* 1 *Atk.* 618.   1 *Russ.* 511. (*note.*)

The 2d inquiry is, who are the objects of the testator's bounty?   *John Tolson* and his family.   The words of recommendation must be applied to persons sufficiently designated, as well as to objects.   The addition of *John's* family does not render the devise uncertain.   *John* was bound to take care of his family.   To that duty his was unequal; and the testator meant to impose the same duty on his brothers, which law and nature imposed on *John.*

The term family in a will means children. *Preston on Leg.* 210. 1 *Roper,* 119. The term relation is more extensive than family. *Cruwys vs. Colman,* 9 *Ves.* 319. *Grant vs. Lynam,* 3 *Cond. E. C. R.* 672.

Wills are to be considered according to the acceptation and meaning of the terms used at the place of making the will, *John* and his family mean *John* and his children.

3. Is the property on which the devise is to operate, sufficiently certain. *Jer. Eq.* 99. 1 *Russ.* 509. To take care of, is as certain as to provide. *Cowp. Chan.* 111, 115. When the objects and subjects of the devise are certain, words of recommendation are construed to be terms of direction. *Johns vs. Stoops, et al,* 5 *Harr. and John.* 430.

Duckett, for the appellants, in consequence of the indisposition of his colleague, informed the court that he would rely to maintain the proposition that words of request in a devise, constituted a trust when found in connexion with objects and subjects that were certain, on *Cary vs. Cary,* 2 *Sch. and Lef.* 190. *Eade vs. Eade and others,* 5 *Mad.* 77, 118. 1 *Bro. C. R.* 489. 2 *Ib.* 226. 2 *Rop. Leg.* 297. That he would rely on the same authorities to show the certainty of the persons alluded to under the designation of family.

That the import of the words to take care of, would be found. *Smith vs. Kuiskern,* 4 *J. C. R.* 10. *Foley vs. Parry,* 7 *Con. E. C. R.* 299, 303. *Jer. Eq.* 102. *Judd vs. Pratt,* 13 *Ves.* 176. *Deffles vs. Goldschmidt,* 1 *Merr.* 417. Rules for the construction of wills. *Jer. Eq.* 54. Heirs at law not to be disinherited but by express provision of the will. *Kellett vs. Kellett,* 1 *Ball and Beatty,* 541. *Pickering vs. Lord Stamford,* 3 *Ves. J.* 492, 493. *Creswell vs. Lawson,* 7 *Gill and John.* 248.

Tuck, for the appellees.

1 and 2. The first and second points may be considered together. They affirm that the subject matter of controversy is not within the jurisdiction of any court; and that the

clause in the will of Francis Tolson, under which the appellants claim, does not create a trust in their favour. These points present for consideration the true construction of the whole will, and more especially of that part on which the present claim depends, when taken alone, and apart from any thing that may be collected for or against the claim, from the context. This is the fairest aspect for the appellants in which their case presents itself. The bill goes altogether upon the ground that a trust was created for the complainant's support and maintenance, and that it is a charge upon the estate devised to the appellees. It is either a *trust* or mere *naked power*, because words of recommendation, desire, &c. have never been construed as passing a *devise.* They operate, if at all, only as constructive trusts. If the words import any discretion in the persons to whom they are directed, to act or not to act, according to the suggestions of the will, they are not imperative. And the whole case rests upon this distinction. 2 *Sug. on Powers*, 174.

What constitutes a trust? Sufficient words—that is, words shewing a plain and unequivocal intention imperatively to raise a trust. Certainty in the person to enjoy the trust, and certainty as to interests of the *certui que trust*, and as to the property on which the trust is raised, or by which it must be supported. These ingredients are more shortly stated in one of the cases, as the " intention, the object and the subject." 6 *Crusi Dig*. 200, *ch*. 10, *title Devise*.

It may be remarked that the will, taken as an entire instrument, negatives the idea of charging any thing for *John Tolson's* benefit, upon the property devised to the appellees, and shews most clearly that they of all others named in the will, were the objects of the testator's peculiar regard. It may also be observed that the words " I request my seven sons," &c. (under which this claim is made,) constitute a separate and distinct sentence, and form no part of the previous devise to the appellees. This circumstance is relied upon in some of the cases where the fact was as it is here, and made the ground of the decision. There is nothing to shew that

this charge was created or intended to be created against the appellees, "in consideration of the benefits they derived under the will," as stated in the bill of complaint.    If these words be taken alone, they are not the ground of any claim in behalf of the complainants; but an attempt is then made to connect them with the previous devise to the appellees, so as to charge their property with the trust.    This cannot be effected without doing violence to the language and the grammatical construction of the will.    There is no necessary legal connection or dependence between the devise to the appellees and the words of request; and it is not competent for the court to expunge or insert a word or comma for the purpose of giving a construction to the will that it will not bear without such alteration.    1 *Russ.* 509.    And a trust will not be declared upon such words as these, where such a decision would violate the general intent of the testator, or be inconsistent with previous devises of the property on which the trust is made to depend.

The first objection to the present claim is that the term "family" is too uncertain to indicate the persons to be benefitted—even admitting the imperative character of the words and the certainty of the property.    This objection of course does not apply to *John Tolson.*    This term in ordinary acceptation means one's "household;" "all within his walls," including "wife, children and servants," and all under the control and direction of one head or master.    It cannot be contended that the testator designed to use the words in that sense.    Such a construction might charge upon these appellees the support of all whom *John Tolson* might choose to take under his protection as members of a common household.    It has no legal or technical signification.    It must here derive all its force from the context, as in all the cases where any legal meaning has been attached to it.    It does not *ex vi termini* refer to the father, wife or children.    It has been held to denote the "heir at law," "next of kin," "relations;" and only in one case has it been construed as including the "father;" in none as including the "mother;"

whereas in some cases it has been adjudged to be uncertain, and the alleged trust defeated on that ground. *Barnes vs. Patch,* 8 *Ves.* 604 *McLaroth vs. Bacon,* 5 *Ves.* 159. *Doe on demise of Chatanaz vs. Smith,* 5 *M. and S.* 126, are the only cases where children have been allowed to take under the term "family;" and in those cases there was something to be gathered from the rest of the will to shew that children were meant by the testator. The word "family," was not held to mean children, *proprio vigore.*

In *Harlan vs. Trigg,* 1 *B. C. C.* 142. *Doe on demise of Hayter vs. Joinville,* 3 *East.* 172. *Sale vs. Moore,* 1 *Simons,* 532. 2 *Cond. Ch. Rep.* 266, this term was decided to be too indefinite, and the parties claiming took nothing. In *Wright vs. Atkins,* cited on the other side from 17 *Ves.* 255, it was decided, at first, that a trust arose for the "family." But on appeal that case was reversed by the Lord Chancellor, and the decree of reversal was afterwards affirmed by the lords. See same case in 1 *Vea. and Bea.* 313, and quoted in *Sale vs. Moore,* 1 *Simons,* 532. In all the cases where persons have been permitted to take as the "family," the intention of the testator was presumed from the rest of the will. Apply that test to the case at bar, and the court will find that the appellants for their designation as the persons meant by the will, must rely solely on the force of the single term "family." The weight of authority, the reason of the decisions, and the whole tenor of the will will concur in rejecting the pretensions of *John Tolson's* wife and children, as the persons contemplated by the testator.

The second objection presented by the 1st and 2d points, is founded on the uncertainty in the description of the interest intended to be conferred on the appellants. The whole residue of the real and personal estate, after deducting some inconsiderable bequests, is devised in express terms to the appellees by name. It is admitted in the bill of complaint, that no specific property was devised to the appellants. But it is said that the " request that the seven sons should take care of *John Tolson* and his family," imposes on them the

duty of providing their support and maintenance, and that this is a charge upon the real and personal property devised to them.    There must always be something certain to support a trust, as well as a certain interest to be enjoyed by the persons for whom the trust property is held.    Here the property is devised in fee.    The appellees have an absolute legal estate in the devise to them; and this charge cannot be allowed unless the court are prepared to say that it was the design of the testator that they should hold that property subject to this incumbrance, and only for the purpose of executing the trust reposed by the will.    If the first devisees (the appellees) have any power of disposing of the residue devised to them, or of diminishing the amount or value of the property by which the charge is supported, then it is not a trust, but a mere power, which they may execute or not as they choose.    By the subject being certain is meant where the whole property must remain entire in the first taker. Where he has the power of disposition, it is uncertain.    2 Mad. ch. 7.   Jeremy's Eq. 98.    This is the result of all the decisions.    In no case of a devise in fee, has a trust been sustained on words of recommendation, where there was not a plain construction that the testator designed only a limited estate to the first taker.    Mason vs. Limbray, cited in Vernon vs. Vernon, Amb. 4.    Eales vs. England, Pre. ch. 200.   Harding vs. Glynn, 1 Atk. 468.    Massey vs. Sherman, Amb. 520.    Nowlan vs. Nollegan, 1 Br. C. C. 489.    Pierson vs. Garnet, 2 Br. C. C. 226.   8 Ves. 573.   10 Ves. 536.   1 Turner, 162.    Malin vs. Keighly, 2 Ves. Jr. 333, 529. Brown vs. Higgs, 4 Ves. 708.   5 Ves. 495.    Birch vs. Wade, 3 Vea. and Bea. 198.    Tibbitts vs. Tibbitts, 18 Ves. 656. 1 Jacob. 317.    Prevost vs. Clarke, 2 Mad. 458.    Cuywiss vs. Coleman, 9 Ves. 319.    Forbes vs. Ball, 3 Merrivale, 437. Harwood vs. West, 1 Sim. and Stu. 387.   2 Sug. on Powers, 177.    In many of the books the trust has been repudiated on the very ground that the whole beneficial interest passed to the first taker, and that trusts by implication cannot be sustained where he possesses any express or implied power

of diminishing the fund. *Cunliffe vs. Cunliffe. Marlin vs. Keighly,* 2 *Ves.* 532. *Kirkbank vs. Hudson,* 7 *Price,* 212. 3 *Eng. Exch. Rep.* 30. *Wynn vs. Hawkins,* 1 *Br. C. C.* 179. *Sale vs. Moore,* 2 *Cond. Ch. Rep.* 269. *Meredith vs. Hineage, et al,* 2 *Cond. Ch. Rep.* 270. *Strange vs. Barnard,* 2 *B. C. C.* 586. *Pushman vs. Filliter,* 3 *Ves.* 7. *Bland vs. Bland,* 2 *Cox Cases,* 349. *Wilson vs. Major,* 11 *Ves.* 205. *Flanders vs. Clark,* 1 *Ves. Sen.* 9. *Wright vs. Atkins,* 17 *Ves.* 255. 1 *Vea. and Bea.* 313. *Eade vs. Eade, et al,* 5 *Mad.* 77. *Abrahams vs. Almans,* 1 *Russ.* 509.

From an examination of the cases this result is "clearly deducible," that if the whole will exhibits any presumptive evidence of the testator's intention to bestow an absolute interest on the first taker, the trust by implication cannot be enforced; and that such an intention may be inferred from an express or implied power of disposition; from the nature of the property, the terms of the particular devise, and of the whole will; and that where the interest of the first taker is *prima facie* absolute, the subsequent words must be very strong, to authorize the courts to divest it, and they will not infer that the testator intended to take away what was previously given, or to create charges thereon inconsistent with its enjoyment.

But even if the testator designed that the appellees should take their property in trust, the extent and character of the interest of the appellants are not sufficiently defined in the will. The words "take care of" can have no legal signification unless there be something in the will to shew what services the testator designed should be performed towards *John* and his family. Did he mean that the appellees should take care of them, although they might be able to take care of themselves? Was this protection to extend to the expense of their education as well as food and clothing? Or was it not rather to be confined to the emergency of their becoming helpless and unable to maintain themselves? Does it appear how long this support was to be extended to them?

Has it any limit as to extent or duration by the terms of the will? and if not, can this court affix any confines to so general a bequest? The plain and obvious import of these words is this, that the appellees should not allow their brother *John* and his family to suffer—they are recommended to their brotherly care and regard, for reasons best known to the testator himself, in the confidence that the kindest offices would be extended towards them so long as their condition might require aid at the hands of others. But no right was intended to be created in them, to call on any court to enforce the performance of these offices as a trust, chargeable on the entire estate of the appellees.

But if the object and the subject are sufficiently defined, the words "I request," &c. considered in connexion with the context, and according to the meaning of the decisions, do not raise a trust. Many of the cases referred to before, shew that this is always a question of intention to be collected from the whole will, that these trusts are not the subject of any peculiar rule, but as in all other devises, the intention of the testator must govern. The rule upon this subject is stated in 6 *Cruisi Dig.* 200. It is contended that where the object and subject are certain, the words are always imperative, and create the trust. This is not so. In *Breginow vs. Moore*, 2 *Ves.* 631, the court disregarded the object and subject, although clearly ascertained, and decided according to the intention of the testator collected from the whole will. And so in *Meredith vs. Henniage and Walker*, 2 *Cond. Ch. Rep.* 282. In *Malin vs. Keighly*, 2 *Ves.* 535, Lord Alvanley has stated the rule as largely as the appellants can desire "that where the object and subject are certain, the trust must be implied, unless the testator manifest a contrary intent." On the contrary, we contend that although the persons to take, and the property be certain, words of recommendation, &c. are not imperative, but of necessity impart a discretion in the person to whom they are addressed, and an intention to create the trust appearing, the will alone can control the exercise of that discretion. The

cases are all referred to in 2 *Story's Eq.* 329, and Lord Alvanly's opinion is quoted, but the learned commentator states the rule, as we say it should be applied here, as the result of all the late cases. Lord Eldon, in many cases of the kind before him, took occasion to express his regret that the old decisions had gone so far, and that the tendency of the more modern was against the creation of such charges upon mere words of desire, &c. In one of his decrees, he says, that the judge who pronounced the first of these decisions made a will for the testator; the late cases are coming back to the rule, that the court will look at the whole will for the intention of the testator as their guide.

Assuming this to be the correct doctrine, is there any thing in the will, looking at the general intention, which can aid these words. If there be any trust at all in the will, this is the only one. All the other dispositions operate as direct devises. We might even take the rule as stated by the other side, and rely upon the whole will as shewing that no trust was intended. We might refer to the technical manner in which the other devises are framed, to the apt words used to create the conditions to be performed by Semmes, the charge in favour of the widow, and the designation of the particular funds out of which the specific bequests are directed to be paid. But if the tests be applied as prescribed by judge Story, how can the trust be established? They must rely upon implication. They are compelled to invoke the court to frame some pretext on which such a design may be predicated. And what must be this implication? It must amount almost to express words. In *Wilkinson vs. Adan*, 1 *Vea. and Bea.* 465, Lord Eldon has said that necessary implication imports, not natural necessity, but so strong a probability of intention, that an intention contrary to that imputed cannot be supposed. It approaches so close to natural necessity that the chancellor excepted that, as the only remove between a meaning by implication and a meaning by the undoubted import of words. Cannot we suppose a different intention in this case, from that set up by the ap-

pellants, without doing violence to the will? In other words, where is that strong probability of intention,. approaching to natural necessity, which excludes any other intention than the one imputed by them? If there be any one purpose most apparent in this will, it is the design to promote and advance the appellees. It may be implied by a strength of construction amounting almost to natural necessity. It is written in italics on the very face of the instrument, and yet if any thing be due the appellants, they may enforce their claim to the whole value of the residue devised to the appellees, and may even exclude them from all participation in any actual benefit under the will, unless there should be a balance after they shall have "taken care of" *John* and his family. As to all others he has a will to be executed, but as to the appellants he has only a request to make; yet we are now told that this mere request is more powerful than his express commands. And this duty of taking care of a man and his family is imposed on seven sons, three of whom are minors, unable to take care of themselves. The court must find that this power is given to the sons, and put upon them as a duty, which they are obliged to perform, and that they take an interest sufficient to enable them to discharge it, else they cannot sustain the trust. This leads to the 3d point.

3d point.—That the case made by the bill does not shew that the complainants are entitled to relief. It is not averred that the property devised to the seven sons is sufficient for the discharge of all the trusts, to wit: the appellants, the children of Middleton and Callis. If they are not enabled by the will to discharge the requests, it is a mere power, and no trust. Per *Lord Eldon,* 8 *Ves.* 574.

The only averment on this point is, that we have received a large amount of property. Who has the first claim to the use of the property, the appellants or appellees? Are the former or the latter to be postponed? It may be assumed that as they are all sons, the appellees were to come in equally with *John.* This is one of the arguments in behalf of *John.* Before then they can take all for the support of *John,* must it

not appear that there is enough for ourselves as well as *John?* And if not enough for all, a rateable proportion is all that equity would allow him.

It does not appear that the appellants are in a situation to need the care of any person. They say they are in the most abject poverty. By whose fault? by what means? by misfortune? by infirmity? or by idleness? If it appeared that they were in a condition to procure necessaries by ordinary industry and diligence, would the court compel the appellees to support them? They should at least shew that they deserve the aid of a court of equity. If this claim is made a charge on the property of the appellees, it imputes to the testator an intention to make them the servants of *John* and his family, whom he would not trust with any part of his estate, and the annual contributions thus levied on the resources of the appellees and their families, will be nothing less than premiums offered for the habits of idleness in which a man who knows that another must support him is too prone to indulge, and by his own example to encourage in his family, while at the same time there exists the same inducement for them to continue in their present alleged "state of abject poverty."

A. RANDALL, also for the appellees, insisted:

That the testator intended his son *John* should have no part of his property. He insisted upon this, as well from the character of the devises generally and specially, and the rules of construction, and in the investigation of the case, cited: *Meggison vs. Moore,* 2 *Ves. J.* 632. *Pr. in Chan.* 201. *Wilson vs. Major,* 11 *Ves. J.* 204. *Lechmere vs. Lavie,* 7 *Con. Ex. C. R.* 329. *Demaneirlle vs. Crompton,* 1 *Ves. J.* 356. 2 *Stor. Eq.* 329. *Wilkinson vs. Adams,* 1 *Ves. and B.* 465. 6 *Cru. Dig.* 175, 158. *Lupton vs. Lupton,* 2 *John. C. R.* 614. *Hart, et al vs. Hart,* 2 *Dessau,* 57. *Nisbett vs. Murray,* 5 *Ves. Jr.* 157. *Wright vs. Atkyns,* 17 *Ves.* 255.

DUCKETT, for the appellants, in reply:

In *Harding vs. Glynn*, 1 *Atk.* 470, it is said, the words willing or desiring, in a will, have been frequently construed to amount to a trust.   This case was decided before the revolution, and is a part of the common law adopted by the Constitution of Maryland.   The incongruity imputed to it by *Judge Story*, in his *Elements of Equity*, is no reason for rejecting it.

The same case shows the meaning of relations.   If words of art are used in a will, the court will respect the established meaning.   2 *Wms. Ex.* 709, 717,

If the objects of a bequest be certain, it will only require actual trustees to complete it.   These a court of equity may always add.

The word family, used with reference to a man in abject poverty, can only relate to his wife and children.

Words of recommendation and desire shall operate as a trust.   *Pushman vs. Filliter*, 3 *Ves. Jr.* 8, 9.   5 *Mar.* 77. These cases show the import of the term bequest, and meaning of the word family.   The court may go into proof of family.

A request will create a trust, if the remainder of the bequest be so certain, that the court can execute it.

It is not optional with the seven sons to take care of *John* or not.   It is true, that the circumstance of the property going over absolutely, and in mass, is to be considered by the court in determining whether trust, or no trust.   It is a powerful circumstance, but not conclusive.   *Jer. Eq.* 98. Does the request bind the conscience of the legatee.   If testator creates a duty, and gives the means of executing it, the court will award the benefit.

Where language is doubtful, the court will lean to the construction in favour of children, and in such a way as will promote the impulses of nature.   1 *Bro. C. C.* 489.   Maintenance and support are perfectly certain.   The *quantum* of allowance in every case is easily ascertained.   2 *Bro. C. C.*

230, 231, *note. Tibbits vs. Tibbits,* 19 *Ves.* 655, 656. 10 *Con. Eng. C. R.* 453. *Birlifield vs. Record,* 2 *Ib.* 271.

We consider the doctrine announced in 2 *Stor. Eq.* 327, 330, *sec.* 1067, to be erroneous. The cases cited do not sustain the learned author. They do not show that the previous decisions were wrong. They do not change the ancient current of the law. He was mistaken as to the English law, *Lord Brougham and Sugden* differ with him. *Lechmere,* 331. *Mackinnon vs. Sewell,* 7 *Con. E. C. R.* 331. Mere words of expectation not recommendation. To take care of his education, and fit him for any respectable profession and employment, not more definite as to quantum of costs and amount to be expended, than the direction to take care of *John* and his family.

The court will entertain the question of maintenance and accertain the quantum of allowance. *Hoffman vs. Cromwell,* 6 *Gill and John.* 151.

The word request creates a trust, unless an express intention, or what is equivalent to an express intention to the contrary, appears in the will. *Eade vs. Eade, et al,* 5 *Mad.* 77. 2 *Bro. C. C.* 226. The word descendants is sometimes used as a *designatio personarum.* 1 *Ross. Leg.* 115, 119. A devise to the family may be made certain by the context of the will. 2 *Fonb. Eq.* 334, *No.* 6, 351, *No.* 6. 2 *Dess.* 545, illustrate the meaning of family. 13 *Ves.* 176, on the same head.

As to intention of testator, no construction is to prevail, where the interest of creditors is not concerned, which will disinherit the child, but from absolute necessity. Then if the family of *John* cannot take, he may. 1 *Dessaus,* 542. A failure of one of the objects of the testator, does not create a failure of all those associated in the same clause.

Money given to a class of persons, the class answering the description at the time of distribution, are entitled. *Pemberton vs. Parke, et al,* 5 *Binny,* 601, 611. The testator did not mean to forget *John* in his dying moments. He intended to supply the wants of nature and keep his naked-

ness from the public eye.   In any event, he designed one-eight of his property for him and his children.   3 *Ves. Jr.* 9. Where the person is certain, and the means are sufficiently provided in the will, on words of request, courts of Equity create trusts.   The words *out of the same,* are not necessary to add to the validity of the devise.   1 *Ross.* 511.   The words to take care of, raise a trust.   *Smith vs. Kuiskem,* 4 *J. C. R.* 10.   *Jer. Eq.* 102.   21 *Law Lib. Pow. on Mort.* 657.   *Jer. Eq.* 53.   The testator is presumed to be acquainted with the law.   6 *G. and J.* 171.   To construe the words of the testator into a mere naked power, is to defeat the will.   No power is necessary to enable one brother to take care of another brother, in indigent circumstances. The father did not mean to make a mere naked request. He could not have supposed that so obvious a duty would not have been discharged by them to some extent.

CHAMBERS, Judge, delivered the opinion of the court.

In looking through this will, we think the testator designed to provide for the maintenance of *John Tolson,* his son, and some other persons whom he designated as the "family" of *John.*

If the language be so uncertain, as to the person designed to take, or as to the thing designed to be given, the court cannot enforce such will, without adding a devisee or legatee not named, or describing property not described in the will.

The term "*family,*" as used in this will, does not designate, we think, any individual persons with sufficient accuracy.

So far then as regards those who were in the contemplation of the testator, when he used this language, the devise must fail for uncertainty, but this will not affect the devise to *John.*

The proper and necessary means of securing the execution of the testator's intention, to provide a maintenance for *John,* is to consider the amount necessary for such maintenance, a charge on the testator's lands devised to his seven sons, and to make them trustees for *John Tolson.*

The Chancery court can then require the payment of such a sum, as under the circumstances of the case will be proper to compensate for the maintenance of *John Tolson,* since his father's death, and secure the future payment of an annuity.

A decree to this effect will be signed.

<div align="center">

DECREE REVERSED, AND CAUSE REMANDED

FOR FURTHER PROCEEDINGS.