(Decided May 31st, 1859.)

---

## Thomas H. Willett, and Sally Maria Willett his Wife, *vs.* Mary Carroll.

A testatrix devised a *farm* called "*Greene's Inheritance*" to W in fee, and then, after giving some personal property to C, added: "*Item*. I do hereby will and direct that the said C *shall have a home*, during her natural life, *on the farm* hereinbefore bequeathed unto W." Held:

1st. That this devise of a "*home*" is not void for *uncertainty*, nor is it confined to a mere *room* and *shelter* in the house on the farm, but extends to the *board* and *maintenance* of the devisee, and is a *charge* upon the land therefor.

2nd. The sum to be awarded the devisee, as an annuity, chargeable on the land, must bear a proper relation to the product of the latter; the standard of her right is the *value* of the *home*, as she was habituated to it in the house of the testatrix.

3rd. In estimating this sum regard must be had to the *manner* and *mode* of life of the devisee up to the death of the testatrix, the relative situation of the parties, according to the position they maintain in society, the condition and habits in life of the testatrix and the devisee, the extent of the estate, the mode of living of the parties, so far as expensiveness or economy is concerned, and the practice and habits of the persons with whom they associate.

APPEAL from the Equity side of the Circuit Court for Charles county.

Teresa A. Coomes, of Charles county, by her will, executed in January 1854, and admitted to probate in May 1854, devised, in fee, "Unto Sally Maria Willett, the farm on which" the testatrix resided, called "Greene's Inheritance,"

containing one hunded and seventy acres, and, "in considera-
tion" of this devise, made "a charge upon the said Sally of
the sum of forty dollars, annually, to be paid unto Nicholas
Coomes." She then bequeathed to the said Sally, certain
slaves and other personal property. She also gave unto Mary
Carroll two negro slaves, and one bed and furniture, and then
added :

"*Item*. I do hereby will and direct, that the said Mary
Carroll *shall have a home* during her natural life, *on the farm*
hereinbefore bequeathed unto Sally Maria Willett."

All the rest and residue of her property the testatrix be-
queathed to the said Sally Maria Willett and Mary Carroll, to
be equally divided between them.

Mary Carroll, the above named legatee, filed her bill in this
case, on the 6th of April 1857, against the appellees, alleging
that, during the life of the testatrix, the complainant and the
said Sally Maria lived with the testatrix in the mansion house
on said farm, and that they were all equally supported and
maintained by the product thereof; and that it was the inten-
tion of the testatrix, by the bequest of a "*home*" on said farm,
to give to the complainant a support, maintenance and shel-
ter, by the use of the mansion house on said farm, and also
by the occupation and use of the usufruct of the farm, so far
as should be necessary to her supply with food and raiment,
and a house for shelter; that after the death of the testatrix,
the complainant continued to reside in the mansion house on
the farm, with the said Sally Maria, in the enjoyment and use
of the product of the farm, until the marriage of the said Sally
with Thomas H. Willett, and that, thereafter, the complainant
was deprived of all benefit of the farm, in their preventing her
from the use of the products of the same, and not permitting
her to eat at their table, by their shutting themselves up at
meals, in their own room, and by petty acts of annoyance,
hindrance and deprivature, debarring her, not only from any
support and benefit of the farm, in the way of food and rai-
ment, but making her situation in the house so unpleasant,
and, indeed, insupportable, that she was compelled to wholly
abandon the house and farm, and seek a home elsewhere; and

has been thereby deprived wholly of the benefit of the said bequest of the testatrix. The bill then prays for a decree, directing the defendants to pay to the complainant, annually, during her natural life, a sum sufficient to furnish her with shelter, food and raiment; or such a decree as the nature of her case demands; and for general relief.

Willett and wife, in their answer, admit the execution of the will, and insist that, by its true construction the complainant is only entitled to sufficient room and shelter on the farm, and that they are not bound to furnish her anything more; and they insist that they are now, and always have been ready, to permit her the use of a room in the house, or sufficient room for her to live comfortably in; but that, since the 1st of January 1857, they have refused to board her, or to furnish her with anything to eat, believing they were not required to do so by the will.

The case was submitted on bill and answer, and the court (CRAIN, J.) in delivering his opinion, said: "From an examination of the whole will, I am satisfied the testatrix, after devising the real estate therein mentioned, to her cousin Sally Maria Willett, designed to charge it with the payment of a sum of money to her brother, Nicholas Coomes, and also to charge it with the board and maintenance of her cousin, Mary Carroll. In the construction of this will it is the bounden duty of the court to ascertain the intention of the testatrix, from an examination of the whole will, and having ascertained such intention, to give it effect and operation, unless it is inconsistent with some well established principle of law. If the devise is so certain and definite, that we can give it effect and operation, it must be enforced and executed. The devise to Mary Carroll of a *home* on the real estate devised to her cousin Sally Maria Willett, is such a charge as can be made certain and operative. I shall send this case to the auditor to take testimony, to enable the court to say what is a fair compensation to Mary Carroll in lieu of a home on said farm, and to form an adequate idea of its value. We are bound to look to the relative situation of the parties, according to the position which the complainant and respondents maintain in socie-

ty. To enable us to do so a proper regard must be had to the condition and habits of life of the testatrix, and also the complainant. We must look to the extent of the estate and to the mode of living of the parties, so far as expensiveness or economy is concerned, and the practice and habits of the persons with whom they associated. I will therefore sign an order, referring this case to the auditor, to take testimony, to show what is a fair and reasonable annual allowance to Mary Carroll, in lieu of said home, to be ascertained according to the principles of this opinion." From the order so passed the defendants appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Frank H. Stockett* for the appellants, argued, that the order appealed from was erroneous:

1st. Because the devise of *"a home"* is too indefinite as to character and extent to be enforced by the court, and is therefore *void.* In the case of *Tolson vs. Tolson,* 10 *G. & J.,* 159, the will said: "I request" my sons "above named to *take care of* their brother John Tolson and *his family,"* and while the court held the devise in favor of *John* to be good, they yet held, that the term *"family"* was too uncertain to designate the *persons* intended by the testator, and that the devise, so far as regards the *family* of John Tolson, must fail. The term *"family"* is not more *indefinite* as to the *persons* designated, than the word *"home"* is in reference to the *subject* devised.

2nd. Because if not too vague and indefinite, the court can only give meaning to the words of the will as used by the testatrix; and, in virtue of this devise, the appellee is *only* entitled, during her natural life, to the use of sufficient *room* in the dwelling-house for her to live comfortably in, without any allowance for her clothing or maintenance.

*Robt. S. Reeder* for the appellee.

The question in this case is, what was Mary Carroll, the legatee, entitled to under the bequest that she "shall have a

*home,* during her natural life, *on the farm* hereinbefore bequeathed unto Sally Maria Willett?" Did the bequest of a home give her a shelter, or did it give her a support and maintenance, as a shelter, food, raiment, firewood, water, air, light, and whatever was a necessary to a comfortable and reasonable support and maintenance, and not a niggardly, contracted, slavish and dependent support and maintenance?

The words, *"shall have a home on the farm,* during her natural life,'' are stronger than if the testatrix had said, should be *"taken care of,"* and yet, in *Tolson vs. Tolson,* 10 *G. & J.,* 159, it was decided, that the words, *"take care of their brother John,"* imposed upon the legatees the obligation to take care of their brother, and that a sum necessary for that purpose was a *charge* upon the property. The *farm* called "Greene's Inheritance" is given to Sally Maria Willett, and the appellee is given a home *on this farm,* thus bequeathed specifically. The *farm* and the *home* are both specific bequests, and there is here as much of a *charge* upon the land as there was in *Luckett vs. White,* 10 *G. & J.,* 480, where a devise to one son, of a farm, "he paying to his younger brother one hundred pounds, current money," was held to be a charge which the court could enforce by a decree. In *Ripple vs. Ripple,* 1 *Rawle,* 386, a devise of land to a son, with the direction that he is "to keep and provide for my wife and my two eldest daughters, during their natural lives," was construed to be a *charge* upon the land. In *Holliday vs. Summerville,* 3 *Penn. Rep.,* 533, land was devised to a son, "provided he pays to my other three children £300," and this was held to be a charge upon the land, although there was personalty. "Give and bequeath a handsome support, during her natural life, to be paid by my executors," is an expression adjudicated upon in *Crocker vs. Crocker,* 11 *Pick.,* 252, and the words in the present case are surely as strong as those. A devise of the rent and profits of a farm gives the *use* of the farm, as in *Craig vs. Craig,* 3 *Barb. Ch. Rep.,* 76, and a *home* on a farm ought to be as strong to the extent of what is necessary to constitute a home.

The intention is to be ascertained from the face of the will, and executed, unless opposed to some principle of law. 1

*Gill,* 395, *Jones vs. Earle.* The word *home* has a large import in its social and general acceptation. A devise of *rents* and *profits* of lands will carry the land itself, (4 *Md. Rep.,* 1, *Cassilly & wife vs. Meyer,*) and *home,* in its received and social import, ought to be of as large force, should so much be required for a support and maintenance. Wills, though the authority of decisions is not to be disregarded, must depend, for construction, upon their own intrinsic force. 7 *Md. Rep.,* 8, *Douglas vs. Blackford.* The word *home* must be construed according to its own intrinsic import, as ascertained by its use in the community in which it is applied. In *Todd, Johnson* and *Walker's Dictionary,* we find that *home* means, His own house;—the private dwelling;—His own county;— the place of constant residence. In *Webster's Dictionary* its definitions are, 1st. A dwelling house;—the house or place in which one resides. "Home is the sacred refuge of our *life.*" —*Dryden.* 2nd. One's own country. 3rd. The place of constant residence;—the seat. "Flandria, by plenty, made the *home* of war."—*Prior.* 4th. The grave;—death;—or a future state. "Man goeth to his long home." 5th. The present state of existence. "Whilst we are at home in the body we are absent from the Lord." 6th. At home;—at one's own house or lodging;—to be at home;—to be conversant with what is familiar. These are the full and large and varied definitions given of the word by these distinguished orthœpists, as derived from general use and custom through standard authors. They indicate the use and enjoyment of the essentials of life.

In *Brown vs. Brown,* 7 *Iredell's Eq. Rep.,* 30, a testator devised to his two sons two tracts of land. B is to erect on C's tract a house, and has the use, for ten years, for that purpose, of certain personal property. At the end of ten years the house is incomplete and badly executed. The court decreed a sufficient sum to be paid C to complete the house in a workmanlike manner. So the word *home,* according to standard orthœpists, having a various signification from the circumstances of its peculiar use, it must here be liberally construed and a sum given in lieu thereof.

The words of a will are to be construed according to their

natural or customary sense, unless some obvious inconvenience or incongruity would result from such construction. 1 *Johns. Ch. Rep.*, 220, *Roosevelt vs. Thurman*. Where the meaning attached to words in a will, by the testator, can be ascertained from the will itself, that meaning should be given to them in the construction of the will, although contrary to common usage. 2 *Munf.*, 234, *Carnagy vs. Woodcock*. In the construction of a will the inclination of the court, where the bequest is ambiguous, is towards the vesting of the legacy. 3 *Iredell's Eq. Rep.*, 323, *Guyther vs. Taylor*. Words favorable to the cause of a legatee are to be beneficially construed, (6 *Mass.*, 169, *Parsons vs. Winslow*,) and the intention of the testator is to be construed liberally to further a purpose, and the whole will must be taken together. 1 *Dessauss.*, 127, *Sams vs. Mathews*. The circumstances of the testator's family, and the extent and kind of his property may be taken into consideration, in construing a will, as indicating his intent. 3 *Murphy*, 27, *Edens vs. Williams*.

In *Holme vs. Harrison*, 2 *Whart.*, 283, under a devise, "my wife is to have the furniture she shall have selected, and *a house to live in and garden, and one-third part of all the estate*," it was held, that the wife took a life-estate in the *house* and *garden*, and a fee in the one-third. In *Wusthoff vs. Dracourt*, 3 *Watts*, 240, a devise of two rooms in a house to the widow, "desiring that she may have a *shelter* for life," was held to give her an estate for life in the rooms, of which she may make any disposition, and not a mere easement for her personal convenience. In *Hunter vs. Stembridge*, 12 *Geo. Rep.*, 192, the words, "I also *allow* my son to give her a support off my plantation, during her life," were held to give a support and maintenance to the wife off the plantation, and was a lien on the plantation to be enforced in equity. The words, "shall have a *home* on a farm, during her natural life," ought to be as strong as a "garden," or a "house," or a "shelter in a room," and create as strong a right in the devisee.

I have not been able to find this case directly decided, and have been, therefore, compelled to resort to analogous cases.

I have also resorted to the definition of the word *"home"* as given by distinguished orthœpists, because language had its origin in the application of words to things, and from its usage we are to determine its signification, where we have not a legal technical import. The *import of language* constitutes the *common law* of the human race, and if we find that, in its usage, it has a signification equal to an absolute title to property, we must so use it where the design is manifest to give a right equal to a support and maintenance.

LE GRAND, C. J., delivered the opinion of this court.

The bill filed in this case asks, that a decree may be passed compelling the appellants to pay annually to the appellee, (the complainant,) during her natural life, a sum sufficient to furnish her with *shelter, food* and *raiment,* or that such a decree may be passed as the nature of her case demands.

The claim of the appellee is founded on the language of the will of a certain Teresa A. Coomes. By that will Sarah Maria Willett, one of the defendants, had, as well as other property devised to her, a *farm* of the name of *"Greene's Inheritance."* The same will, after giving two slaves, and one bed and furniture to the complainant, Mary Carroll, proceeds as follows:

*"Item.*—I do hereby will and direct, that the said Mary Carroll shall have a home, during her natural life, on the farm hereinbefore bequeathed unto Sally Maria Willett."

The answer of the defendants admits the due execution of the will, but insists that, by a "true and proper construction of it, the complainant is *only entitled to sufficient room and shelter on the farm called Greene's Inheritance, devised in said will,"* and that the defendants are *" not bound to furnish her with any thing more."*

The Circuit court, on an examination of the whole will, was of the opinion, that the testratrix designed to devise the real estate charged "with the board and maintenance of her cousin, Mary Carroll," the complainant, and we are of the same opinion.

There was no evidence taken in the case, and therefore,

independently of the allegations of the bill, we are left entirely in the dark as to the relations which had subsisted between the testatrix and the complainant. But this darkness can be dispelled, in all probability, by testimony to be taken before the auditor, and it may then be made to appear, as stated in the bill, that up to the time of the death of the testatrix, and of the intermarriage of the defendant, Sally Maria, with the defendant, Thomas H. Willett, the complainant and the defendant Sally Maria, lived on the farm in the enjoyment and use of the mansion house and the product of the farm, and during the life of the testatrix, she, the complainant, and the defendant Sally Maria, were all three equally supported and maintained by the product of the farm.

The principal question in the cause, is, the construction of the clause in the will in reference to the *"home"* to be given to the complainant. In the case of *Tolson vs. Tolson,* 10 *G. & J.*, 159, and 8 *Gill*, 376, the following words were the subject of judicial interpretation: *"*I *request* my seven sons, above named, *to take care* of their brother John Tolson and his *family,"* and it was decided, that whilst the term *"family"* was too indefinite to designate the persons intended by the testator, and therefore, as to those contemplated by that term, the devise failed, yet, that in reference to *"John"* the devise did not fail, and that the proper and necessary means of securing the execution of the testator's intention to provide a maintenance for him, was, to consider the amount necessary for that purpose a charge on the land devised to the seven sons, and to make them trustees for John.

The case now before this court is much stronger than that of Tolson. There the words were, *"I request,"* and, *"take care of,"* here, they are, *"*I do hereby *will* and *direct,"* that Mary Carroll *"*shall *have* a *home* during her natural life *on* the *farm* hereinbefore,*"* &c. In the one case the provision rests on a mere *request,* whilst in the other it is expressly *willed* and *directed,* and imperatively commanded, that the complainant *"shall have"* a *"home."* If, then, the case of Tolson be authority in this State, (and we can perceive no reason why it is not to be so regarded,) it follows, inevitably,

that the complainant is entitled, under the devise, to *something* more than a mere *shelter* from the "pitiless peltings" of the elements.     The word "home," not only in its true etymology, but in its ordinary acceptation, means something more genial than a mere privilege to perambulate a dreary room.     The common sense, as well as the common charity of the world, revolts at the idea, that a word everywhere hallowed, even among barbarians, as typical of something sacred and beneficent, should be dwarfed into the chilly proportions of a room, fireless, bedless and foodless.     Such is not and never was its meaning, unless the whole world have, up to the present time, with persistent ignorance, misused it

We are clearly of opinion, that the testatrix intended to provide for the *comfort* and not the *annoyance* of the complainant, and that when she used the word "*home*," she understood it as importing what every body else had been accustomed to understand as its meaning.     In affirming the action of the Circuit court, and remanding the case for further proceedings, we deem it proper to say, that whatever decree may hereafter be passed, regard should be had to the manner and mode of life of the complainant up to the death of the testatrix, and the sum awarded her as an annuity chargeable on the land, should also bear a proper relation to the product of the latter.     This direction we give upon the supposition, that the allegations of her bill will be made out by proof to be taken before the auditor, and if this should turn out so, then a proper standard will be furnished to measure her right, which will be the value of the "home," as she was habituated to it in the house of the testatrix.     We concur fully with the circuit judge in the following: "We are bound to look at the relative situation of the parties, according to the position which the complainant and respondents maintain in society.     To enable us to do so, a proper regard must be had to the condition and habits in life of the said testatrix, and also the complainant.     We must look to the extent of the estate, and to the mode of living of the parties, so far as expensiveness or economy is concerned, and the practice and habits of the persons with whom they associated."

In addition to the case of Tolson, we refer to that of *Hunter vs. Stembridge,* 12 *Georgia,* 192.

　　　*Order affirmed with costs, and cause remanded for further proceedings under act of* 1832, *ch.* 302.

(Decided May 31st, 1859.)