NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
May, 1880.

WOOD v. SEWARD.

*In the matter of the estate of* JOHN D. MAXWELL, *deceased.*

Precatory words in a will do not create a trust, where, either by a consideration of all the provisions of the will, or by the express words of the testator, it appears that the recommendation was not intended to be obligatory upon the executors.

By the first clause of his will the testator provided that his mother and four sisters should remain and continue to live together as one family, and should continue to occupy the house now occupied by them, and make it a home for themselves, and added, "But this clause in my will is

not to be considered or treated as a direction or instruction, but simply as a suggestion of my wish and desire." By the second clause, the mother and sisters were charged to continue to support and afford testator's aunt "the same home which I have always assured for her." By the third clause, the testator gave all his estate to the executors in trust (with power of sale), to collect the rents, income and profits thereof, and to dispose of the same; first, to pay debts, &c., and then to pay the residue to a trustee named (also with power of sale).

*Held*, that the precatory words of the first clause were not to be taken as obligatory and as creating a trust.

THIS was a motion to confirm the report of the auditor on the final accounting of the executor and executrix of decedent's will. The account was contested by one of the sisters of decedent, Mrs. Wood, the only married sister, on the ground that the executor and executrix had not charged themselves with the rental value of the premises occupied by the decedent, his mother, and four unmarried sisters at the time of his death, and which premises they have since continued to occupy.

The testator was a wealthy bachelor, and had been the support of his mother and sisters, including Mrs. Wood, as long as she remained unmarried. He occupied during his life the house in which he died, his mother and four sisters living with him, his mother being the nominal head of the house, but he supplying the necessary household expenses for their support. For many years preceding his death, the testator and his mother and sisters had so lived together as one household.

By the first clause of the will, the testator provided that his mother and sisters "shall remain and continue to live together as one family, of which my mother shall be the head; and that my said mother and my said four sisters shall continue to occupy the house now occupied by them, and make it a home for herself and my said

sisters. But this clause of my will is not to be considered or treated as a direction or instruction; but, simply as a suggestion of my wish and desire."

The second clause of the will charges his mother and sisters "to extend, afford and continue to my aunt, Jane Dunlap, the same home, support and maintenance which I have always assured for her."

By the third clause he devises to his executors all his real and personal property of which he should die possessed, in trust, with power to sell, &c., for the best interests of the estate, and collect rents, income and profits thereof, and dispose of the same and of such portions of his estate as they should not convert; *first*, to pay his debts, and funeral expenses; *second*, to pay, transfer and convey the residue, after such payments as were theretofore provided for, to Clarence A. Seward, as sole trustee, with power to sell and convert the same into money, and reinvest the same, so as not to diminish the principal; and to pay the rents, income and profits thereof to his mother and sisters for life, each one-sixth part; *third*, on the death of the mother to pay her sixth part of the income equally to his five sisters; and *fourth*, he gave to each of his said sisters power to devise and bequeath a fifth part of the principal of said estate so held by the trustee, to whom they might elect.

By the fourth clause of his will he states the object of the disposition of his property to be that it shall remain invested as it then was, so long as it should be prudent, so as to keep it a unit, "so that the income thereof may be sufficient to provide my said mother and sisters with a permanent and comfortable home and income." And because his mother and sisters were not

18

familiar with the management of affairs, he appointed a trustee, with the powers named, and he expressed his wish and direction that the trustee, if he should so elect, should keep and preserve the same investments that he should find at his decease ; and if any loss should accrue, his executors and trustee should not be liable.

The auditor overruled the objection, and held that the mother and sisters were not chargeable, under the will, with the rent of the house occupied by them.    Exceptions were filed by Mrs. Wood.

CHARLES M. DA COSTA, *for the executors.*

TOWNSEND & WEED, *for the objectors.*

THE SURROGATE.—The question involved is whether the decedent's expression of a wish and desire that his mother and four sisters should live together and continue to occupy the homestead, accompanied by the statement, at the close of the first clause of his will, that such expression should not be considered or treated as a direction or instruction, has any binding force upon the executor, executrix and trustee.

Such precatory words as are first used as above would constitute a trust, by declaring the first taker to be a trustee for those whom the donor intended to benefit. So that, but for the subsequent words which conclude the clause, I am of the opinion that the estate taken by the executors and trustee would have been subject to that trust in behalf of the mother and the four sisters, although the third clause, by which the whole property is given and devised, makes no reference thereto. (1 *Perry on Trusts*, 112 ; see also 2 *Story Eq.*, § 1068 ;

2 *Roper on Legacies*, § 1417 ; 2 *Redfield on Wills*, 410, pl. 6 ; *Tiffany & Bullard on Trusts*, 47, 223.)

But it seems to me equally clear that the concluding words of the clause, that the expression of his wish and desire should not be regarded as a direction or instruction, forbids the implication of any such trust. Perry, in his first volume on Trusts (§ 115), says : "However strong the language of recommendation or request may be, a trust will not be implied if the testator declare that such is not his intention." (And see 2 *Story Eq.*, § 1069.)

*Redfield on Wills* (vol. 2, p. 416), in quoting the language of Lord CRAMWORTH, V. C., in Williams *v.* Williams (1 *Sim.*, *N. S.* 358), says that "the real question in these cases always is, whether the wish or desire or recommendation that is expressed by the testator, is meant to govern the conduct of the party to whom it is addressed, or whether it is merely an indication of that which he thinks would be a reasonable exercise of the discretion of the party, leaving it, however, to the party to exercise his own discretion." To the same effect are the cases, Gilbert *v.* Chapin (19 *Conn.*, 342), Pennock's Estate (20 *Penn.*, 268). In the last case, it was held, that expressions of desire, &c., in a will were not *prima facie* sufficient to convert a devise or bequest into a trust, and that the Roman and English rule on the subject did not prevail in that state, and only amounts to a declaration of trust, where it appeared from other parts of the will, that the testator did not intend to commit the estate to the devisee or legatee, or its ultimate disposal to his discretion.

These authorities, and numerous others that might be

cited, establish the doctrine that precatory words will not create a trust, where, either by a consideration of all of the provisions of the will, or by the express words of the testator, it appears that the recommendation was not intended to be obligatory. The language of the first clause of the will in question, if inserted in or engrafted upon the third clause, would not in this case create a trust for the benefit of the mother and four sisters, in the use and enjoyment of the homestead in question.

It will be observed that by the third clause all the real and personal property is given and devised to the executors, with power to sell and receive the income, with directions for its disposition, with power on the part of the sisters to give and devise the whole body of the estate, with no reference whatever to the wish and desire of the testator contained in the first clause.

It is claimed, however, that the second clause, charging his mother and sisters to continue to their aunt Jane Dunlap the same home, &c., as he had always assured, is an indication that the mother and sisters would be in a condition to afford such home, which affirms the obligatory trust created by the first clause.

But I am not willing to hold that that is a sufficient indication of its obligatory character, to overcome the positive language of the testator, that it should not be so regarded.

It is also claimed, that the statement by the testator in the fourth clause of the will, of the reasons for making his will as he did, that the income might be sufficient to provide his said mother and sisters with a permanent and comfortable home and income, affords another indication

that the precatory words contained in the first clause
were to be regarded obligatory, and that the "comfor-
table home" so mentioned was that referred to in the first
clause; and that the term, comfortable home, meant a
home without liability for rent.   But it will be observed,
that by this clause the  home and income are to be
afforded from the income of decedent's property, and
hence the cases of Willett *v.* Carroll (13 *Md.*, 459), and
Lyon *v.* Lyon (65 *N. Y.*, 339), cited by the learned
counsel for the executors, have no application to this
case.

Entertaining this view of the will, it is not necessary
to consider the question whether it was the intention of
the decedent to charge his mother and sisters rent for the
use and occupancy of the house.

It is suggested that the latter portion of the first clause
of the will was added by the testator for the purpose of
escaping the force of the statute against the unlawful
suspension of the power of alienation of real estate, upon
the assumption that the mother and four sisters being
entitled to occupy the. premises, would unlawfully sus-
pend the power of alienation.   But how the force of the
statute could thus be avoided, if there was any obligatory
force in the request, is not apparent.   For the rule is
well established, that if by the terms of the instrument
there may be such suspension the future estate is void
in its creation.   I cannot suppose that the precatory
words referred to were used for that purpose, as the
trustee, the mother and the sisters were adults, and
hence able to convey an absolute fee in possession.

The question raised by the learned counsel for the
executors, that by the correspondence between Mrs.

Wood and himself the former is estopped from claiming rent for the period past, is not tenable for two reasons : first, because there is no exception to the finding of the auditor upon that subject.; and, second, because the transaction lacks the important features of an estoppel. It does not appear that the executors have so acted on the faith of Mrs. Wood's statement, that any loss would accrue to them by her present claim of her share of the rent of the homestead, for the liability of the mother and sisters to pay rent subsists, as well as the authority of the executors to enforce it. If there is any question as to the responsibility of the mother and sisters, the executors and trustee have the means of reimbursing themselves for any over-payments made to them, and the authority to do so should be contained in the decree. The exception to the report of the auditor, disallowing the claim for rent of the premises in question, should be sustained, and the report, so modified, should be confirmed.