(Decided 13th December, 1875.)

---

SAMUEL MEAKIN *vs.* ELIZABETH H. DUVALL.

*Appeal— Code, Art. 5, sec. 22—Construction of a Will, giving a Permanent home and Comfortable board to the Testator's daughters, during their single lives.*

An order to the clerk to "enter an appeal" to the Court of Appeals, "in the above entitled cause," filed after the passage of the final decree in the cause, without indicating from what opinion, decree or order of the Court the appeal is taken, must be regarded as an appeal from the final decree; and an appeal from such a decree opens for revision, all previous orders in the case from which no previous appeal has been taken. (Code, Art. 5, sec. 22.)

A testator died in 1856, leaving a will which contained the following clause : "I will and devise that my two daughters E. H. D. and M. H. D., each have a *permanent home* during their single lives at Prospect Hill, my present residence, and that *comfortable board* be furnished them during their residence there as aforesaid, by their brother J. M. D. at his expense, and the devises and bequests hereinafter made to him, will be made upon the condition that he furnish his sisters with their said board as directed." The home place, called "Prospect Hill," with considerable personal property, was demised to J. M. D. Soon after the testator's death J. M. D. and his

Meakin *vs.* Duvall.

sister M. H. D. died intestate, and the land was sold to a stranger. On a bill filed by the surviving daughter, who had left the house, against the purchaser, to obtain a commutation for the provision made by the will in her favor, it was HELD:

1st. That a provision of this character is a charge upon the land, not only while it is in possession of the original devisee, but follows it through all subsequent alienations

2nd. That the complainant was not entitled to commutation unless the proof showed she had been deprived of, or hindered in, the enjoyment of the privilege, by or through the fault of the party from whom she sought the commutation.

3rd. That the right to a *comfortable board*, was, by the will, made to depend upon residence in the house, and consequently a voluntary removal from the place would deprive the complainant of the benefit of the whole provision, so long as such absence continued.

4th. That she could however have the provision commuted into a money charge if the defendant had deprived her of, or hindered her in, the reasonable enjoyment of these privileges in the mode in which the testator had declared she should enjoy them.

5th. That such commutation should not be made simply because the property had by their misfortunes passed from the family of the testator into the hands of a stranger.

6th. That it was the right of the defendant to discharge the duties imposed on him by the will, in the mode prescribed by the instrument itself, and he could not be deprived of that right and made to pay a money charge without just cause shown.

7th. That mere conjecture as to what might happen if the complainant should resume her residence in the house with the present owner, could not be accepted as safe ground for judicial action. The trial must first be made, and the test of experience first applied.

8th. That as the proof failed to establish a case of involuntary removal from the house by the complainant, the bill should be dismissed, but the right of the complainant to enjoy the privileges conferred by the will was not thereby destroyed; and she might at any time apply for and demand them from the defendant, and if he refused to allow her to enjoy them, or she should be prevented or hindered in the just enjoyment of them, she would then be entitled to receive a compensation in money therefor.

APPEAL from the Circuit Court for Prince George's County, in Equity.

The facts of the case are sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON and MILLER. J.

*N. W. Watkins, P. W. Crain and Wm. H. Tuck,* for the appellant.

Firstly. The devise in question is not a charge upon the estate dèvised by the will.

Secondly. Even assuming said devise to ·be a charge upon the estate, the appellee must show that the àppellant prevented her by his conduct towards her from having or enjoying a home on the farm.

Thirdly. Assuming for the sake 'of the argument, that this devise is a charge upon the estate, the allowance made by the Court below is wholly out of proportion to the value of the estate devised, and of the products thereof.

On the first point, reference is made to the language of the devise itself. The will must· be construed from the language used in the will itself. *Douglas vs. Blackford,* 7 *Md.,* 8 ; *Roosevelt vs. Thurman,* 1 *John. Chan. Rep.,* 220.

On the second point, see *Willett & Wife vs. Carroll,* 13 *Md.,* 459.

*Frank H. Stockett,* for the appellee.

The provision made in the will for a permanent home and comfortable board to the appellee, is a clear and well defined chàrge on the real estate, " Prospect Hill," afterwards purchased by the appellant and now in his possession. The cases of *Tolson vs. Tolson,* 10 *G. & J.,* 159 ; *Willett vs. Carroll,* 13 *Md.,* 459, *and Donelly vs. Edelen,* 40 *Md.,* 118, have set this question at rest in this State.

Not one of these cases is as strong, nor as carefully worded to leave no doubt of the intention of the testator, as the one now before the Court. The testimony shows that the appellee could not have enjoyed a "*home*," nor had such *comfort* in boarding or living with the family of the appellant, as was manifestly contemplated by her father, and to which her position and culture entitled her. To obtain and enjoy these she was as much compelled to seek another residence and other associates, as if she had been forcibly ejected from the premises, or denied her necessary food.

The testator intended to provide for the *comfort* and not the *annoyance* of his daughter, and one can hardly imagine a more dreary and comfortless *home* than she would have had at "Prospect Hill," with the tenant and family of the appellant.

MILLER. J., delivered the opinion of the Court.

The father of the appellee died in 1856, leaving a will which contains this clause: "I will and devise that my two daughters, Elizabeth H. and Mary H. Duvall, each have a *permanent home* during their single lives at Prospect Hill, my present residence, and that *comfortable board* be furnished them *during their residence there* as aforesaid, by their brother James M. Duvall, at his expense, and the devises and bequests hereinafter made to him, will be made upon the condition that he furnish his sisters with their said board as directed." He then devised his home place called "Prospect Hill," together with considerable personal property, to his said son James. Soon after their father's death James and Mary both died intestate, and without issue. The estate was then in 1861 sold under proceedings in equity for the purpose of partition, and George W. Duvall another brother of the appellee became the purchaser, and in May, 1864, mortgaged it to the appellant to secure a loan of $10,500. Afterwards in

1868, George W. Duvall became bankrupt, and the assignees in bankruptcy sold the property to the appellant for $8250. This sale took place in April, 1869, and though duly confirmed, the purchaser did not obtain full possession of the dwelling house on the premises until the 15th of August, 1870.

Some time after the last mentioned date, the appellee filed her bill against the appellant, in which, after stating most of the above facts, she avers the provisions in the will in favor of her sister and herself, constitute a charge upon the Prospect Hill Estate, that she is single and has never married, that she continued to reside upon the estate from her father's death until about July, 1870, when the appellant without her consent took possession of the entire dwelling house, and in fact, expelled her from the occupation and possession of the same, and it is now exclusively occupied by him and his tenant, so that it is utterly impossible and inconvenient for her to reside on said premises, and that since his purchase he has refused, and still refuses to contribute any thing for her board and maintenance, and she therefore prays that the amount now due her as a suitable compensation for such home and board, and a suitable annuity to be paid her in future therefor, may be ascertained and decreed to be a charge upon said real estate.

The appellant in his answer avers that after his purchase, the complainant excluded him from the property, undertaking to hold exclusive possession of the entire dwelling house against his remonstrance and demands, and that having previously notified her of his intention to take possession of the property, but not so as to interfere with the provision in the will in her favor, did take such possession as he had a right to do. He denies that he expelled her from the occupation of the dwelling house, or that the same is exclusively occupied by him or his tenant, or that it is impossible or inconvenient for her to reside

on the premises, that on the contrary, he has repeatedly informed her he would not interfere with the provision in her father's will, that the place was always open for her, and that he would always endeavor to make it a pleasant home to her. He further says, her whole object has been and still is, to change this provision in the will into the form of a rent in money to be charged upon the property, which he has refused to allow her to do; that while he does not admit that this provision is a charge upon the estate in his hands, yet desiring to avoid litigation, he is willing and still offers as he has always heretofore been willing, and repeatedly offered, that she shall have a permanent home during her single life at Prospect Hill, with comfortable board during her residence there, at his expense, and in general, the full benefit in every particular of this provision in her favor.

Testimony was then taken, and the learned Judge of the Circuit Court delivered an opinion sustaining the complainant's claim, determining the amount she was entitled to receive, as well as the time from which it was to commence; and to enable him to pass a decree, referred the case to the auditor to state an account in accordance with the directions contained in his opinion. After the account was thus stated, a final decree was passed, fixing the amount due for arrearages and the annual sum to be thereafter paid, and decreeing the property to be sold for that purpose, in default of payment of the same. The defendant's solicitor then gave an order to the clerk to "enter an appeal," to this Court, "in the above entitled cause." The appellee has made a motion to dismiss, because the order for the appeal is too general in its character, and does not indicate from what opinion, decree or order of the Court the appeal is taken. But it seems to us clear that we must regard it as an appeal from the final decree. It was taken a few days after that decree was passed, and by fair intendment must be referred

to it, and an appeal from such a decree opens for revision all previous orders in the case from which no previous appeal has been taken.   *Code, Art* 5,,*sec.* 22.   The motion to dismiss is therefore overruled.

A provision of this character is a charge upon the land, not only while it is in possession of the original devisee, but follows it through all subsequent alienations.   This is a proposition so well settled, as to admit of no further question   *Tolson vs. Tolson,* 10 *G. & J.,* 159 ; *Willett vs. Carroll,* 13 *Md.,* 459 ; *Donnelly vs. Edelen,* 40 *Md.,* 117. Looking to the testimony in this record, and the standard of measurement stated in *Willett vs. Carroll,* we think the money compensation allowed by the decree appealed from, in lieu of the specific enjoyment of the privilege is not unreasonable.   But the question is, has the appellee made out a case entitling her to this commutation ?   She is not entitled to such relief, unless the proof shows she has been deprived of, or hindered in, the enjoyment of the privilege, by or through fault of the party from whom she seeks the commutation.   On this point the authorities are clear. Thus in *Addison vs. Bowie,* 2 *Bland,* 626, where a testator devised that his wife and daughters and her son shall have a home at his mansion house, the Chancellor, after defining what such a privilege means,,says, "the party to whom it is given may enjoy or leave it at pleasure; but he cannot claim *compensation* for it from *any one* unless he has been hindered in, or driven from the enjoyment of it."   In *Willett vs. Carroll,* where the will was that the appellee should have a *home for life on the farm,* the case was heard on bill and answer, and the appeal was from an order directing the auditor to take testimony to show what was a reasonable allowance in lieu of the provision, on the principles laid down in the Court's opinion.   The Court of Appeals approved that action, defined the meaning of the bequest, fixed the standard by which to ascertain the compensation, and *remanded the cause* for further proceed-

ings, but were careful to say they gave such directions,
"upon the supposition that the allegations of her bill will
be made out by proof to be taken before the auditor," and
among such allegations was the averment that she had
been wholly deprived of the benefit of the bequest, and
compelled to leave the house and farm, by the acts and
conduct of the defendants, which are particularly stated.
In *Donnelly vs. Edelen*, the testator directed that his five
daughters should have a *home* in the house, and a *rea-
sonable support from the farm*.   The annual income from
the farm being only $200, the whole of it was allowed to
the three daughters who filed the bill, and the question
before this Court was, whether that allowance should be
affirmed.    It was affirmed, *because* the proof was abun-
dant to show that this sum was inadequate to afford them
a reasonable supply of food and clothing, without refer-
ence to the value of the home.    One of the daughters had
voluntarily left the place, and become a Sister of Charity,
and the Court conceded that *she* was not entitled to com-
pensation in respect to her right to a room and residence in
the house, while she remained in the Sisterhood, but said
she was clearly entitled to the reasonable support from the
farm ; and as to the other two, they said "if they have been
really *hindered in* and *prevented from*," (as the bill alleged
they had been,) " the reasonable enjoyment of a suitable
portion of the house on the farm as a place of residence,"
*then*, "according to the decision in *Willett vs. Carroll*, they
are entitled to be *compensated* for such deprivation."

The Court in that case took the distinction, (and the
decision rests on that,) founded on the terms of the will,
between the provision for a *home*, and that for a *support
from the farm*.   The gift of the latter was without restric-
tion, and could therefore be claimed by the daughters,
whether they chose to remain on the place or not.    But in
the case before us, the *comfortable board* as well as a home
in the house, is to be furnished the daughters, only "*during*

*their residence there."* The right to be furnished this board is, *by the will,* made to depend upon residence in the house, and consequently a *voluntary* removal from the place will deprive the appellee of the benefit of the whole provision so long as such absence continues. She can, however, have it commuted into a money charge, if the appellant has deprived her of, or hindered her in, the reasonable enjoyment of these privileges in the mode in which the testator has declared she should enjoy them.

But we have carefully examined the testimony in the record, and, in our judgment, it wholly fails to make a case warranting such commutation. The proof shows that the appellee left the premises sometime before the appellant purchased them, taking with her or retaining the key of the house, and never returned to it but once, when she came for some furniture, and said it was sad to see the place looking so badly, and that she never wanted or expected to come there again. The house, at and before that time, was out of repair, with broken windows and leaking roof, but this was through no fault of the appellant. As soon as he got possession, he proceeded to put it in good and substantial repair, and made it his family residence. It was her duty before filing this bill, to have applied to, and demanded from him the enjoyment of these privileges, but this she never did. He has never refused, or even expressed an unwillingness, to accord them to her. On the contrary, in a letter early in July, 1870, from his counsel, (which it is proved she received,) she was informed she was at liberty to retain any rights she had in the property under her father's will, and that he has always been ready to allow her any claim she may have for which he or his property was responsible. He has in every way, except by going to her in person, (and this he was under no obligation to do,) manifested his readiness and willingness to give her the full benefit of this bequest. She has, therefore, not only, not been

expelled or driven by him from the house, or subjected to the annoyances so forcibly stated in the case of *Willett vs. Carroll*, but has never encountered even a disinclination on his part to perform his duty to her under the will. Nor is it shown there is anything in his person, or character or that of his family that would necessarily render it disagreeable or unpleasant for a lady to live in the same house with them. It is not proved nor alleged that he is a man of bad temper, or of bad habits or associations, or even of bad manners. Nothing in fact is alleged or shown against his good character and conduct. He is proved to be a man of means and prompt in the discharge of all his obligations, and is, therefore, as able as he is willing to discharge this duty fairly and justly.

In short there is nothing in this testimony tending to show that the appellee could not be furnished by the appellant with a suitable room or rooms in his house to live in, with comfortable board and all necessary and reasonable attention of servants, and other usual conveniences and comforts of a home.

Unless, therefore, we are prepared to take the broad ground, that this commutation must be made simply because the property has, by their misfortunes passed from the family of the testator into the hands of a stranger, there is nothing upon which this decree can stand. But this step we cannot take. However much, loss of property, of relations and friends, and change of circumstances and society, may excite sympathy for those who are unfortunately subjected thereto, they cannot be made grounds for infringing legal rights. It is the right of the appellant to discharge the duties imposed on him by this will in the mode prescribed by the instrument itself, and he cannot be deprived of that right and made to pay a money charge without just cause shown. Nor can mere conjecture as to what may happen if the appellee should resume her residence in this house with its present owner,

be accepted as safe ground for judicial action.  The trial must first be made, and the test of experience first applied.

We are therefore of opinion this decree must be reversed and the bill dismissed.  But in doing this the right of the appellee to enjoy these privileges at any time she may choose, is not destroyed.  She may, at any time, apply for and demand them from the appellant, and if he refuses to allow her to enjoy them, or she shall be prevented or hindered in the just enjoyment of them, she will then be entitled to receive a compensation in money therefor.

> *Decree reversed, and*
> *bill dismissed.*

(Decided 21st December, 1875.)

STEWART, J., dissented.