ELLEN SOPER, Respondent, *v.* ELMER HALSEY, Appellant, Impleaded with Another.

*Marriage — presumption as to — election to accept a conditional provision in a will — when unnecessary — what does not amount to the forfeiture of a benefit therein granted — services as a compensation therefor.*

Where there was neither a marriage ceremony nor any contract of marriage between a man and woman, and no agreement to live together as husband and wife, but only an agreement to live together, the man never having held the woman out to the world as his wife, nor she being reputed to be his wife, the general repute being to the contrary, the facts do not create a presumption, as a matter of law, that the marriage relation exists between the parties.

A clause contained in the will of a testator was in the following words:

"And I further will and direct that my said son Elmer shall have a home on my farm where I now reside during his natural life, if he shall so elect, and shall remain unmarried, but he shall have no right to bring a wife on said farm to live in case of his marriage."

*Held*, that the testator's son Elmer would not forfeit his interest in the farm by failing to indicate that he elected to claim it;

That he was entitled to the benefit of the provision of the will in his favor whenever he chose to demand the same;

That in order to give a proper construction to such clause and to the intention of the testator, reference must be had to and dependence largely placed upon facts *aliunde* the provision itself.

It appeared that while the testator lived, Elmer had received from him $200 a year and his board for his services.

*Held*, that if he demanded the benefit of the provisions of the will in his favor, he should render to those charged with furnishing him his living such services on the farm as were appropriate as compensation therefor.

APPEAL by the defendant, Elmer Halsey, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Seneca on the 30th day of March, 1893, upon the decision of the court rendered after a trial at the Seneca Special Term construing a certain provision in the will of Luther H. Halsey, deceased.

*J. N. Hammond*, for the appellant.

*F. L. Manning*, for the respondent.

DWIGHT, P. J. :

The action was to obtain a judicial construction of the following clause in the will of Luther H. Halsey, deceased, viz. :

" And I further will and direct that my said son Elmer shall have a home on my farm where I now reside during his natural life, if he shall so elect, and shall remain unmarried, but he shall have no right to bring a wife on said farm to live in case of his marriage."

The testator made his will in 1881 and died in 1883 at the age of seventy-five years. The defendant, Elmer, his only son, had always remained at home and worked on the farm, and, although somewhat addicted to drink, was — in the language of the witnesses — " very attentive to the farm as a rule," and " was his father's principal dependence for work for a great many years."

During the last ten years of his father's life Elmer maintained relations with a woman named Tallman, which the court at Special Term finds constituted marriage within the meaning of the testamentary provision in question. This finding we regard as altogether unsupported by the evidence. There was never any marriage ceremony nor any contract of marriage; there was no agreement to live together as husband and wife, but only to live together. He had never held the woman out to the world as his wife, nor was she reputed to be such, but the general reputation was to the contrary. The facts were not such as to constitute the relation of marriage in the eye of the law, and clearly they did not constitute that relation within the intention of the testator, because, with the facts well known to him, he makes the provision in question for his son to continue so long as he " shall remain " unmarried.

Whatever the purport or effect of that provision, we have no hesitation in saying that it was not forfeited or defeated by the existence of the relation between Elmer and Elizabeth Tallman.

The remaining problem in the case, viz., to give its due construction and effect to the provision in question, according to the intention of the testator, is perhaps not so easy of solution; it must depend largely upon facts *aliunde* the provision itself, some of which, in addition to those already stated, are as follows :

The wife of the testator died before the will was made ; Elmer and Ellen, the plaintiff, were the only ones of his children who remained at home with him — the latter as his housekeeper and the former as his main dependence on the farm. The farm consisted of 160 acres of good land and was considered by the testator when he made his will to be worth $16,000. He gave it, free of incumbrance, except the provision in question for Elmer, to Ellen, together with all the household effects and the live stock, except the horses. To two other unmarried daughters he gave $5,000 each, absolutely, and his residuary estate, whatever that should be. To three grandchildren he gave $1,000 each, absolutely, and to a son George, who is not otherwise mentioned anywhere in the case, the sum of $1,000, " provided he shall call for the same within ten years after my death.' The case affords no explanation of the curious proviso attached to this gift, but, in itself, it indicates something peculiar in the status of this son — possibly that he had long since dis-

appeared from home and from the knowledge of his father, and that it was even doubtful whether he was still alive. But whatever the case in this respect, we think the son George may be dismissed from the account when a comparison is made of the several provisions for the children of the testator. To Elmer he gave $500 absolutely, and the income, annually, of $5,000, which sum he gave to his executors in trust, for that purpose, besides the working horses and farm implements on the farm at the time of his decease.

The disparity in the provisions, thus far, for Elmer and Ellen, was very great, while, so far as appears, both had deserved alike from their father. The effect of the additional provision here in question was to lessen, in some degree, that disparity, by laying a burden upon the one for the benefit of the other. It was also intended, no doubt, to have the effect of continuing the relations of the two to each other, and to the home which had been theirs in common for so many years. By the terms of the will Elmer, on certain conditions, was to have a home on the farm during his natural life, and Ellen was to have the farm subject to the interest of Elmer. The precise question here is what the term " home," as here employed, was intended to include.

The court, at Special Term, said it meant only a lodging place, for which Elmer should pay what it was reasonably worth.

We are not at all satisfied with this exposition. We think it falls short of the benevolent intention of this prudent father towards his somewhat wayward but always faithful son. It is impossible to restrict the meaning of the word " home," as here employed, to mere shelter and a bed. Elmer had always had a home on the farm, and it included subsistence; and so, we are satisfied, was the home intended, to do which his father provided for him by his will.

But we do not suppose that it was intended that his sister, or her grantees of the farm, should support him in idleness. While his father lived Elmer had earned his living, and more, by his labor on the farm. He had received from his father $200 a year, besides his board, for his services. And when his father provided for him a continuance of his living on the farm, we think it fair to assume that it was intended he should continue to render corresponding services in return therefor.

A similar view was taken of a similar provision in a will in the

case of *Lyon* v. *Lyon* (65 N. Y. 339). That was the case of provision by a father of a home for a daughter on premises devised to sons. The daughter had been accustomed to render the usual services of a daughter in the home of her father, and the court held that under the provision in question she was entitled to a home, including support and maintenance, and was bound, in return, to render appropriate services in the home therefor.

In this case it cannot be required that Elmer should do the work which he did on his father's farm, by which he earned $200 a year besides his board and lodging; but we think it is in keeping with the spirit of the provision made for him that he should render to those charged with furnishing him his living, such services on the farm as are appropriate as a compensation therefor.

The contention that the defendant had forfeited his " interest in the farm " by failing to indicate that he elected to claim it, is not to be maintained in this case. No time is fixed by the provision in which the election shall be made, and we suppose he is entitled to the benefit whenever he elects to demand it.

The judgment in this case should be modified in accordance with the views here expressed, and as so modified affirmed, without costs of this appeal to either party.

LEWIS and BRADLEY, JJ., concurred.

Judgment modified as indicated in opinion, and as modified affirmed, without costs.