(159 App. Div. 240.)

## In re BURR'S ESTATE.

(Surrogate's Court, Cattaraugus County. December 24, 1913.)

WILLS (§ 466*)—CONSTRUCTION—"HOME."

    A granddaughter, whose mother had died, and who had been deserted by her father, who never contributed to her support, was taken by testator into his own family and cared for, clothed, and educated to some extent. Testator at all times prior to his death treated her as his own child, and willed her in addition to a pecuniary legacy a "home" at testator's homestead until she was 21 years old. Held, that the word "home" was not limited to a mere abiding place, but included the right of maintenance, board, clothing, and all necessary medical attendance until the legatee arrived at 21, subject to her duty to contribute such services in the home as might be expected of a girl of her age and station in life, and, if she was deprived of any of such privileges, she would be entitled to recover the fair and reasonable value thereof against the estate..

    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 985; Dec. Dig. § 466.*

    For other definitions, see Words and Phrases, vol. 4, pp. 3322–3325.]

Application for probate and construction of the last will of Stephen Burr, deceased.

Charles E. Congdon, of Salamanca, Special Guardian for Grace Lewis, an infant heir and legatee.

James H. Burr, of Chicago, Ill., in pro. per.

DAVIE, S. Stephen Burr, a resident of Cattaraugus county, died November 2, 1913. He left him surviving no widow, but left one son, three daughters, and several grandchildren, his heirs at law and next of kin, one of whom is Grace Burr Lewis, a daughter of Kittie J. Lewis, a deceased daughter of the testator. He possessed real and personal estate at the time of his decease of the value of $5,000. He left a last will and testament, dated June 11, 1903, which is now presented for probate. On the return of the citation for the proof of such will the granddaughter Grace Burr Lewis, by her special guardian, filed a request for a construction of the provisions of the will hereinafter referred to pursuant to the requirement of section 2624 of the Code of Civil Procedure. By the terms of the will, the decedent bequeathed to his son and each of his surviving daughters and to the granddaughter Grace Burr Lewis the sum of $200. The item of the will relating to this granddaughter which is the provision in controversy is as follows:

   "To my granddaughter, Grace Lewis two hundred dollars to be paid to her when she is twenty one years old, by my executor and to have a home at my homestead until she is twenty one years old."

The residue of the estate is devised and bequeathed to the son, the living daughters, and granddaughter Grace Lewis, share and share alike.

The only criticism which can be passed upon the testamentary provision above quoted is its element of uncertainty as to what is meant

---

by, and what really passes under, the bequest of a home at the homestead for the granddaughter.

The term "home" is not an arbitrary one. It may mean one thing under certain conditions and another thing under different circumstances. Whether it is to be limited to simply a domicile or abiding place, or whether it embraces not only shelter but food, clothing, education, and medical attendance in case of sickness, must all be determined by the circumstances existing at the time of the execution of the will. The authorities throwing light upon this question are not numerous. In Lyon v. Lyon, 65 N. Y. 339, the sole question involved was the construction of the following clause in the will of the father to the parties to the action:

"I furthermore order, as long as my two youngest daughters remain single my home shall be their home free of expense as to paying any rent or privilege in said house."

### In the opinion, Earl, C., says:

"The plaintiff had always lived in her father's house and been supported by him. When he provided that his house should continue to be her home, he manifestly meant that she should have such a home as she had had—such a home as children have in the house of their parents with whom they live. The word 'home' could have been present to his mind in no other sense, and in this sense it included maintenance and support, she rendering such services as a child under the circumstances would be expected to render in the family of her parent. * * * She was single, needed a home and support while single and this he intended to give her. If he had meant simply a room in his house he would probably have used more appropriate language. He would have given her the right to live in the house or more probably the right to occupy some definite portion thereof."

### In Soper v. Halsey, 85 Hun, 464, 33 N. Y. Supp. 105, the provision of the will under consideration was as follows:

"And I further will and direct that my said son Elmer shall have a home on my farm where I now reside during his natural life, if he so elects, and shall remain unmarried, but he shall have no right to bring a wife on said farm to live in case of his marriage."

### In the opinion, the court says:

"The precise question here is what the term 'home' as here employed was intended to include. The court at special term said it meant only a lodging place for which Elmer should pay what it was reasonably worth. We are not satisfied with this exposition. We think it falls far short of the benevolent intention of this prudent father towards his somewhat wayward but always faithful son. It is impossible to restrict the meaning of the word 'home' as here employed to mere shelter and a bed. Elmer had always had a home on the farm, and it included subsistence; and, so we are satisfied, was the home intended, to do which his father provided for him by his will; but we do not suppose that it was intended that his sister, or her grantees of the farm, should support him in idleness. * * * When his father provided for him a continuance of his living on the farm, we think it fair to assume that it was intended he should continue to render corresponding services in return therefor."

In other cases it has been held that the term "home" included board. Harteau v. Harteau, 14 Pick. (Mass.) 186, 25 Am. Dec. 372; Robinson v. Cushman, 2 Denio (N. Y.) 152.

In Willit v. Carroll, 13 Md. 459, where this same subject was under consideration, the court says:

"The word 'home,' not only in its true etymology, but in its ordinary acceptance, means something more genial than a mere privilege to perambulate a dreary room."

The design and intention of the testator should be ascertained, and for this purpose the court may inquire into the conditions existing at the time of the execution of the will, the value of the estate and the relations existing between the testator and the beneficiary. Stimson v. Vroman, 99 N. Y. 79, 1 N. E. 147; Williams v. Jones, 166 N. Y. 533, 60 N. E. 240; Matter of Woodward, 167 N. Y. 28, 60 N. E. 233.

In this case the proof shows that the mother of the legatee, Grace Lewis, died during the early infancy of the legatee. Her father deserted her and never contributed to her support. Her grandfather, the testator, took her into his own family, cared for, clothed, and educated her to some extent, and treated her at all times with the same care and consideration as he would his own child. At the time of making the will she was of tender age, and the conditions were such as to prompt the testator to exercise a fatherly solicitude for the nurture and maintenance of the granddaughter, and accordingly he incorporated the provision referred to in his will. Under such circumstances it must be held that the bequest to her of a home on the homestead until she became 21 meant something more than simply the right to abide, that is, have a shelter at the homestead while such homestead was maintained. It included the right of maintenance, board, clothing, and if necessary medical attendance, and such rights were to continue for a definite length of time, that is, until the girl had arrived at full age, and, if she be at any time hereafter deprived of these rights by the parties interested in the estate either by a sale or other disposition of the homestead, or by a line of conduct on the part of the parties occupying the homestead, making it impossible for her to reasonably enjoy these privileges, she will have a right of action against the estate to recover the fair and reasonable value of the privileges of which she has been so deprived, such value to be determined when the necessity therefor arises. This is, of course, under the general trend of the decisions referred to, coupled with the obligation on the part of the legatee of rendering, in the maintenance of such homestead, such service as might be reasonably expected from a girl of her age and in her station in life. While this provision of the will quite likely constitutes no actual lien upon the real estate comprising the homestead, yet it creates a condition where, if she is deprived of her right to a home there by the acts of those who succeed to the property, she will have a valid claim against the estate therefor.

A decree will accordingly be entered in connection with the probate of the will in conformity to the foregoing conclusions.