In the Matter of the Estate of EMIL E. GABLER, Deceased.

Surrogate's Court, Westchester County, June 19, 1931.

*Lesser Brothers* and *Hilbert I. Trachman*, for the executors.

*George K. Jack*, for Ella M. Gabler, the widow.

*Stephen E. Ryan*, for Norine Veronica Degnen, remainderman.

*F. Ferris Hewitt* [*D. Theodore Kelly* of counsel], for General Hospital of Saranac Lake, remainderman.

SLATER, S. Difficult questions arise in this construction proceeding due to the fact that, when the will was executed on April 30, 1927, the financial affairs of the decedent were in better condition than when he died. The codicil was executed on August

16, 1930, and his death occurred on September 19, 1930. The estate at death consisted largely of real property, well mortgaged, the equity valued at about $150,000. The personal property, money in the bank, did not exceed $2,000.

The gifts of money legacies in the will amounted to $28,000. This was reduced by the codicil to $20,000.

The evidence read into the record, upon consent of all attorneys appearing, shows that, when the will was executed, the decedent had about $6,000 in personal property, and about $240,000 in real estate, either free and clear or equities therein; that decedent's income per annum as indicated by his income tax reports was as follows: 1926 net income, $19,950.22; 1927 net income, $15,907.70; 1928 net income, $12,940.14.

The evidence further discloses that the decedent was married to his wife upwards of twenty-five years at the time he died.

The 6th paragraph of the will gives to the wife " all my household furniture, furnishings and effects, jewelry and all personal effects and belongings." I will hold that this paragraph gives to the widow the household furniture and furnishings in the home of the decedent at Pelham Manor, and in the bungalows in the camp located in Upper Saranac, New York. The savings bank account and shares of stock and the balance in the account in the Irving Trust Company are not included. This is a case where the articles given, such as household furniture, furnishings and jewelry, are cut down by the maxim *ejusdem generis* which limits the meaning. of general words to things of the same class as those theretofore enumerated. (*Matter of Delaney*, 133 App. Div. 409; affd., 196 N. Y. 530; *Central Union Trust Co.* v. *Flint*, 198 App. Div. 703; *Matter of Jones*, 128 Misc. 244.)

The 8th paragraph of the will provides a home for the widow in the following words: " I direct my Trustees, hereinafter named, to retain and maintain my home at Pelham Manor, New York, so long as my said wife, Ella M. Gabler, shall desire to live therein, and upon the death of my said wife, or should she sooner indicate her desire to live elsewhere, I direct my Trustees to sell said home and add the proceeds thereof to my residuary estate, or to rent or make such other provision with reference to my said home as may be within the discretion of my said Trustees, provided the trust established by this, my Last Will and Testament, shall still be and remain in effect pursuant to the terms of this, my Last Will and Testament."

By the 9th paragraph of the will all legacies and bequests were given free of inheritance tax.

The remainder of the estate is given upon trust as follows:

" *Tenth*. I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, of every kind and nature, and wheresoever situate, to which I may be entitled at the time of my death, or which I may have the power to dispose of at my decease, to my Trustees, hereinafter named, *in trust*, nevertheless, for the uses and benefits hereinafter specified, and with the following powers and subject to the following conditions and provisions: (A) To invest and reinvest and keep invested the rest, residue and remainder of my estate; to receive and collect the rents, interest, income, dividends and profits thereof, and after deducting all expenses incident to and attendant upon the execution of said trust, *including all expenses necessary for the maintenance of my home at Pelham Manor, New York, as hereinbefore in paragraph Eighth provided*, to pay the annual sum of Seven thousand two hundred ($7,200) Dollars to and for the use of my wife, Ella M. Gabler, for and during the term of her natural life. (B) After payment of the annual sum of Seven thousand two hundred ($7,200) Dollars to my wife, Ella M. Gabler, as aforesaid, to pay the balance of net income of said trust to Mrs. Norine Veronica Degnen, of #1125 Lexington Avenue, Borough of Manhattan, City and State of New York.

" In the event that the said Mrs. Norine Veronica Degnen shall predecease me, or surviving me should she die during the continuance of this trust, I direct my Trustees to pay the corpus of the said trust, upon the death of my said wife, as follows:

" One-half, absolutely, to the General Hospital of Saranac Lake, Winona Avenue, Saranac Lake, New York.

" One-half, absolutely, to my nephew, Ernest H. Nohn, or his issue, in equal shares, *per stirpes.*

" (C) Upon the death of my wife, Ella M. Gabler, during the continuance of the said trust, I direct my Trustees to pay the corpus of the said trust and my entire residuary estate to the said Mrs. Norine Veronica Degnen absolutely.

" In the event that the said Mrs. Norine Veronica Degnen shall predecease me, or surviving me should she die during the continuance of this Trust, I direct my Trustees to pay the corpus of the said Trust, upon the death of my said wife, as follows:

" One-half, absolutely, to the General Hospital of Saranac Lake, Winona Avenue, Saranac Lake, New York.

" One-half, absolutely, to my nephew, Ernest H. Nohn, or his issue, in equal shares, *per stirpes.*

" (D) In the event that my wife, Ella M. Gabler shall predecease me, then I give, devise and bequeath my entire residuary

estate to Mrs. Norine Veronica Degnen, absolutely and in fee. Should the said Mrs. Norine Veronica Degnen predecease me, my wife Ella M. Gabler having also predeceased me, then I give, devise and bequeath my residuary estate, as follows:

" One-half, absolutely, to the General Hospital of Saranac Lake, Winona Avenue, Saranac Lake, New York.

" One-half, absolutely, to my nephew, Ernest H. Nohn, or his issue, in equal shares, *per stirpes.*"

The 11th paragraph provides that the gift to the widow is in lieu of dower. The 12th paragraph contains a power of sale.

The codicil reduced former legacies, and displaced an executor and trustee and gave him a legacy of $5,000.

The usual thing has happened here — the ultimate remaindermen are endeavoring to secure from the court the least possible for the primary object of the testator's bounty — the wife. They are willing to have the court deny to the widow even sustenance. Gratitude, a precious virtue, is not displayed.

With regard to the *maintenance of the home* at Pelham Manor, the decedent and his wife lived there, and in the summer season occupied the camp in the Adirondacks. The meaning of " maintain " depends upon the context in which it appears. Webster's Dictionary defines " maintain " as " to keep in any particular state or condition; to keep up." " Maintain " means to bear the expense of; to keep up, to support. The verb " maintain " signifies to support what is already brought into existence. Maintenance is defined to mean sustenance, supply of necessaries and conveniences. (*Alexander* v. *Parker,* 144 Ill. 355.) It means aid and assistance.

The provision in the will says the trustees are to " retain and maintain my home at Pelham Manor, New York, so long as my said wife, Ella M. Gabler, shall desire to live therein * * *." In construing the meaning and effect of a testamentary disposition of property the testator's intent should be ascertained and followed, unless it runs contrary to statute or other rule of law. (*Matter of Buechner,* 226 N. Y. 440, 444; *Matter of Kenny,* 224 App. Div. 152, 156.) It may be said that the language of the decedent's will shows a paramount intention to provide for his wife as he had in his lifetime. He regarded her as the first object of his bounty.

The will directs the trustees to pay " all expenses necessary for the maintenance of my home at Pelham Manor, New York * * *." The provisions for the widow are made in lieu of dower and are to be construed most favorably for her. (*Spencer* v.

*Spencer,* 38 App. Div. 403.) Provisions for support embrace an unusual degree of solicitude for the person, and such provisions are accorded a "most favorable construction." (*Thurber* v. *Chambers,* 66 N. Y. 42.)

The word "home" includes maintenance and support. (*Lyon* v. *Lyon,* 65 N. Y. 339.) Here the court said: "With nothing to support her she could not make that room her home. * * * If he had meant simply room in his house, he would probably have used more appropriate language. * * * The testator simply intended to emphasize his intention, that the home should be without any expense to his daughter; she was to have all the privileges of a home, without any expense." As the trust herein was expressly created for the benefit of the widow, its construction must be adapted to the conditions which rendered it necessary, and the intention of the testator must be our absolute guide. The testator, upon his marriage to the widow, assumed the obligation of providing for her during his own life and, by his words, he intended to continue that obligation as shown by all the provisions of his will during the life of his wife. The obligation which rested upon him while living he provided should be borne by his estate after his death. He recognized his legal as well as his moral obligation. There is no need to attempt to resort to the widow's property, if she has any. The gift is an exoneration of her private estate.

The words "maintain my home" embrace "'whatever is requisite to give security from want, and furnish reasonable physical, mental and spiritual enjoyment; * * *. In short to possess those nameless currents of enjoyment which take their rise in the assurance of money in the pocket and more to come.'" (*Clark* v. *Clark,* 23 Misc. 272, 287.)

The term "home" may mean one thing under certain conditions and another thing under different conditions. In the instant case it means a home the same as had existed, embracing not only shelter but food, clothing and medical attention in case of sickness. The court would be unjust to the testator to hold that the word "home" could have been present in his mind in any other sense.

In *Willett* v. *Carroll* (13 Md. 459) the court says: "The word 'home' not only in its true etymology, but in its ordinary acceptation, means something more genial than the mere privilege to perambulate a dreary room."

To ascertain the intention of the testator the court may inquire

into the conditions existing at the time of the execution of the will, the value of the estate, and the relations existing between the testator and the beneficiary. (*Stimson* v. *Vroman*, 99 N. Y. 74, 79.)

The decedent and his wife passed together a married life of twenty-six years. I will hold that the executors are required to keep up the home by proper and necessary repairs to the house; to keep the grounds, fences, hedges, walks, lawns, shrubbery, drives, outbuildings, and, in fact, the entire household in repair; to maintain the domestic establishment within and without the house (*Matter of Winburn*, 139 Misc. 5); to pay the cost of fuel for heat, gas or electricity for light and cooking, a telephone, hiring of a maid, replacement of furniture, an automobile, a chauffeur, if the decedent had such, silverware, linen, food, clothing and care of a physician; in other words, maintain, support and keep up the entire home establishment and the widow as the decedent was providing when he died. (Davids N. Y. Law of Wills, §§ 852, 853.)

The widow took no estate in the land by the 8th paragraph, but a personal interest or bequest which constituted a lien or charge on the Pelham residence. (*Chew* v. *Sheldon*, 214 N. Y. 344, 349.)

I will hold that the widow, by virtue of her personal right under the 8th paragraph of the will, may not rent the home. The charge was created for her use of the place as a home, the living to be as it had been when husband and wife lived there together. Occupancy by others was not contemplated. A legal life estate was not created, with the right to rent. (Real Prop. Law, §§ 156, 157, 247.)

The power of sale over the Pelham home is controlled by the desire of the widow, and a sale without her consent is inconsistent with the idea of a home for her.

The question is raised as to whether the widow shall be paid $7,200 per annum out of the *net income*, or whether the terms of the will require the payment of the full sum of $7,200 per annum out of income, if ample, and otherwise out of corpus. Is the fixed annual sum mentioned in the will an annuity? An annuity is a yearly payment of a certain sum of money. Where a trust is charged with the payment of annual sums, the recipient is now often termed an " annuitant." The term " annuitant " has acquired a more extended meaning than at common law, and frequently denotes a trust beneficiary entitled to annual payments. (*Matter of Kohler*, 193 App. Div. 8; revd., without reference to this question, 231 N. Y. 353; *Matter of Smathers*, 133 Misc. 812, 815.) One of the ultimate remaindermen points to the fact that,

after the payment of $7,200 to the wife is made, the trustees are directed to pay the balance of the *net income* of the said trust to another person, claiming that the decedent had in mind the gift of $7,200 per annum to the wife out of net income. I do not concur in this construction. I believe that the testator intended payment of the full $7,200 per annum in any event, and, should the income of the trust property be more than such an amount, the excess passed to another person.

In the instant case the gift of $7,200 is not limited to income as was the case in *Matter of Smathers (supra)*. Its payment does not depend upon the ability of the estate to earn the amount designated. (*Booth* v. *Ammerman*, 4 Bradf. 129, 133; *Matter of Kohler, supra*.)

I hold that an annuity was created which caused the annual gift to be paid from both income and principal, if necessary.

The next question to be considered is whether the money legacies of $20,000 and the bequest or annuity to the wife are a charge upon the real estate.

When legacies are a charge upon land is written upon in *Matter of Mould* (117 Misc. 1; affd., 204 App. Div. 889; affd., 236 N. Y. 582); *Matter of Lilienthal* (139 Misc. 225).

In seeking to learn the intent of the testator with regard to charging the real estate with the payment of the legacies, it is necessary to consider the surrounding circumstances at the time he executed the original will. The residuary clause blends both real and personal estate; the personal estate at the time of the execution of the will was insufficient to pay the legacies; the will directs that transfer taxes on the gifts be paid from the residuary; a power of sale is given; the wife is a legatee for $5,000, plus her annuity. All of these reasons, given force in determining the question of a charge, cause me to hold that the legacies and the annuity are charges upon the land. The executors seek direction upon other matters.

Ordinary repairs, taxes, interest on mortgages and fire insurance on the income-producing real estate must be paid by the executors or trustees, as well as all expense necessary for the maintenance of the Pelham Manor home. The question of the carrying charges on the unproductive and unimproved real property may not be considered at this time. They must be paid. The question as to whether they should be allocated to principal or to income may properly be left to a future time for determination. Unproductive real estate should be sold as soon as possible. Rentals falling due September 1, 1930, for the month of September and subsequent thereto, should be apportioned as of the date of the decedent's

death, part falling to corpus and the remainder to income. The same will apply to payments made for fire insurance. Installments due on the mortgages about to fall due should be charged to corpus as they are debts of the decedent which he directs to be paid. Taxes assessed upon the real estate, and which have become *liens* prior to the decedent's death, will be charged to corpus.

Submit decision and decree.