In the Matter of the Estate of Eugenie C. Ely, Deceased.

Surrogate's Court, Wayne County, December 24, 1935.

*Erwin Bruce Hallett,* for the petitioner in each proceeding.

*Charles P. Williams,* for the executors and trustees in each proceeding.

*Charles T. Ennis,* special guardian for infant remaindermen in each proceeding.

GILBERT, S.   The will of Eugenie C. Ely, late a resident of the village of Clyde, Wayne county, was admitted to probate in this court on the 18th day of June, 1935, and letters testamentary duly issued to Security Trust Company of Rochester, N. Y., and George S. Allen of Clyde, N. Y., executors and trustees therein designated. Briefly, the will of the decedent set up a trust of her entire estate for the benefit of a daughter, Marie Eugenie Ely Fallon, during her lifetime and at the death of the life beneficiary bequeathed the corpus of the estate to her two children, or the survivor of them, and, if both children predeceased the life tenant, gave the power of appointment to the life beneficiary to be exercised in her last will and testament.

Two proceedings have been instituted by Marie Eugenie Ely Fallon: *First,* a proceeding for the construction of decedent's will, instituted by a petition verified November 19, 1935; the *second,* a proceeding instituted by Marie Eugenie Ely Fallon, as guardian of the person and property of her two infant children, by a petition verified November 29, 1935, for an order authorizing

and directing the executors and trustees to make certain disbursements from the corpus of the estate for the benefit of the infants. In each proceeding substantially the same relief is sought, the theory apparently being that the authority to grant an order for the relief desired may be found in the provisions of decedent's will in one or the other, if not both, of the two methods of approach.

The proceeding for the construction of the will of the decedent will be first considered and a brief statement of the facts is necessary to a proper understanding of the condition of the Ely family and of the situation and circumstances surrounding the testatrix at the time she executed her will, which was executed a few months prior to her death. At some time in the past this family had possessed great wealth. The family residence in the village of Clyde is a most pretentious one and represents such an outlay of money as is very unusual in the communities in this rural county. The family, until recent years, had lived in luxury and ease and the furnishing of the home and the household effects and jewelry of the decedent were in keeping with a lavish scale of living. The decedent left her surviving two daughters: One, the petitioner in these proceedings and who is the life beneficiary of the entire estate; the other, a married daughter for whom only incidental provision is made. The daughter Marie Eugenie Ely Fallon, the petitioner in this proceeding, is the mother of two infant daughters of the ages of fourteen and eleven respectively. The petitioner was married in 1920, but separated from her husband in 1924, since which time she and her two children have made their home with the testatrix and were entirely supported by the testatrix until the time of her death. Petitioner's husband has never provided any support or money for the petitioner during the years since 1924 and his whereabouts is unknown. These facts were all within the decedent's knowledge. Through reasons not disclosed in the papers in these proceedings, but which are not important or pertinent, the fortunes of the Ely family have been steadily on the decline for some years past, and for a number of years prior to her death the decedent had regularly depleted her capital in maintaining herself, her daughter and grandchildren and, at the time of her death, the estate had shrunk from what has been stated in these proceedings to have at one time been an estate in excess of $1,000,000 to an estate which has been appraised since decedent's death at the figure of $73,302.41. Of this total appraised value, $15,077 represents jewelry, $7,254.35 represents household effects, and $10,350 represents unproductive real estate and includes the homestead. Of the balance, $9,900 represents income-producing real estate, and approximately $26,000 represents stocks and bonds, some of which are income-producing. The

total gross annual income of the estate is estimated at $2,260.40, and the estimated net income is $1,279.61.

Decedent's will contains six principal dispositive clauses with numerous subdivisions and is too lengthy a document to be set out in full in this decision. It will be necessary, however, to refer to a number of these clauses and subdivisions in construing the will as they are so interrelated. It is subdivision 3 of clause first which is specifically designated in the petition for construction. This clause reads as follows:

"*First.* I give, devise and bequeath to Dr. George S. Allen of Clyde, N. Y., and to the Security Trust Company of Rochester, N. Y., all my property and estate, both real and personal, and of every kind and nature, in trust, however, for the following uses and purposes, viz:

" 1. I direct that my just debts and funeral expenses be paid.

" 2. Subject to the directions hereinafter given, I direct that my property and estate be invested and reinvested and the net income therefrom be paid to my daughter Marie Eugenie Ely Fallon, or used for her benefit, for and during her natural life.

" 3. For and during the lifetime of my said daughter, Marie Eugenie Ely Fallon, or so long as she wishes to use the same, I direct that my residence in Clyde, N. Y., and its contents and furnishings, including automobiles, be kept intact and that my said daughter be permitted to use, occupy and enjoy the same as a home

" 4. Upon the death of my said daughter, and subject to the directions hereinafter contained, I direct that all my said property and estate be divided into two equal parts or shares and I give one of such shares to my granddaughter, Wilhelmina Patricia Ely Fallon and I give the other of such shares to my granddaughter, Eugenie Carolyn Ely Fallon. I direct, however, that the principal of each of such shares be held and retained by my Trustee until the granddaughter entitled thereto shall attain the age of thirty years, when the principal thereof shall be paid over to her.

" 5. In the event that either of my said granddaughters predecease my said daughter without leaving issue or descendants, then, upon the termination of said trust for my daughter, I give the whole of said trust estate to the surviving granddaughter. In the event of the death of both of my said granddaughters before the death of their mother and without leaving issue, then I give my said daughter a right of appointment with full power to dispose of said trust estate by her will."

The petitioner contends that the wording of subdivision 3 supports a finding by this court of such an intention on the part of the testatrix as will authorize the court to make an order directing

the executors and trustees to install a new heating plant in the residence and to make certain alterations and replacements in plumbing; to augment the income of the residuary estate with sufficient payments from principal to provide maintenance, comfort, support, board, clothing and medical attention to the petitioner, the heating of the residence and the upkeep of the grounds; to augment the income with such payments of principal as are necessary to provide for the maintenance, comfort, support and board, clothing, medical attention and education of petitioner's two children, the remaindermen; to pay from the principal fund all taxes on the residence property and on the personal property contained in the residence; to pay from the principal fund certain bills incurred by the petitioner since the death of the testatrix for necessities used and enjoyed by the petitioner and her children; to augment the income with such payments from the principal fund as may be necessary to produce an annual fund of $2,000 to be applied by the petitioner for the maintenance, support, comfort of herself and for the maintenance, comfort, support and education of her two children.

The petitioner claims to find the intention of the testatrix that the foregoing benefits be secured to her through the use that the testatrix made in subdivision 3 of clause first of the words, " I direct that my residence   *   *   *   be kept intact and that my said daughter be permitted to use, occupy and enjoy the same as a home."

She also finds support for her contention in the opening words used by the testatrix in clause sixth of the will which reads, " It is my purpose to provide for my daughter Marie Eugenie Ely Fallon during her life and then for the equal division of my property between her two children."

There are other phases of the will which are urged upon the court by the petitioner as lending support to her position which will not be discussed in this decision as they add little to what has already been quoted and space will not permit a discussion of them.

The special guardian for the infant remaindermen agrees with the position taken by the petitioner.

The executors and trustees, however, contend that there is no intention expressed by the testatrix or which can be construed from the language used which would warrant them in using any of the corpus of the trust estate for the support and maintenance of the life beneficiary or her children or for the upkeep of the residence or the replacement of fixtures therein and they contend that permission only is given to the petitioner to occupy the residence if she so desires and there is no obligation on their part to use principal funds in maintaining the residence.

It requires merely a casual study of the assets of this estate to see that the estate is top heavy with unproductive items. Sufficient time has hardly elapsed to enable the executors to convert unproductive assets into income-producing assets. The testatrix has seen fit by the terms of her will to hedge in the power given to the executors and trustees to sell real estate and personal property with a provision that such sales, excluding stocks and bonds, may only be made with the approval of the life beneficiary. It will be presumed, however, that the testatrix did not contemplate an arbitrary withholding of consent by her daughter but that the daughter should exercise this privilege in good faith and would co-operate with the executors and trustees for the best interests of the estate and of the beneficiaries. In fact, the somewhat peculiar and detailed provisions of the will necessitate a co-operation between the beneficiaries and the representatives in order to carry out the wishes of the testatrix.

The intention of the testatrix cannot be mistaken. Her intention is expressed in so many words where she provides in clause sixth of her will, " It is my purpose to provide for my daughter, Marie Eugenie Ely Fallon, during her life and then for the equal division of my property between her two children." To see what provision the testatrix made to carry out her expressed purpose we turn to clause first of her will which contains all of the dispositive provisions for the benefit of the daughter, the other clauses in the will providing only particulars of the manner in which the testatrix desired these benefits to be enjoyed and for the final disposition of her estate upon the death of the life beneficiary. *Matter of Burr* (83 Misc. 240); *Lyon* v. *Lyon* (65 N. Y. 339); *Soper* v. *Halsey* (85 Hun, 464), and *Matter of Gabler* (140 Misc. 581) are cases cited by the petitioner and by the executors and trustees in support of their respective positions. These cases deal with what is meant by the word " home " when used in a testator's will. Precedents are of little value in the construction of wills for the reason that the facts are never the same in any two cases. It is, however, of assistance in a construction proceeding to see how the courts have construed provisions in other wills based on the facts applicable to those wills.

Of the cases above cited, and which seem to be the only cases in this State on the subject, the facts in *Matter of Gabler* more nearly approach the present situation than the facts in the other cases. Surrogate SLATER's very liberal construction of the eighth paragraph of the will in *Matter of Gabler* was modified to a great extent by the Appellate Division (235 App. Div. 807) and the decision of the Appellate Division was affirmed by the Court of Appeals (261

N. Y. 517). In that case we have a husband providing for his widow. In the case at bar we have a widow providing for her daughter. In both cases the object of the bounty was near and dear to the testator. While the wording of the clauses in question differ in the respective wills the result desired was undoubtedly the same. The Appellate Division held that the language used in *Matter of Gabler* did not authorize the trustees to pay the cost of fuel for heat, gas, electricity, a telephone, maid hire, furniture replacement, food, clothing, etc. However, the decision of the surrogate that the clause did comprehend the making of proper and necessary repairs was affirmed by the appellate court, and I am satisfied that the testatrix in the will at bar intended by the language used and from the general disposition made of her property that so long as her daughter, the petitioner herein, desired to live in the family residence, the executors and trustees should maintain the residence to the extent of keeping the same in repair, having in mind a reasonable use by the daughter, and should pay the taxes and ordinary upkeep thereof but not including fuel, clothing, food, etc., for which provision is made for the daughter by the additional bequest of the income from the estate. It will be noted that subdivision 3, above referred to, does not direct the executors to provide a home for the petitioner but directs them to keep the family residence so long as the petitioner desires it to be kept and gives to the petitioner permission to occupy and enjoy the same as a home.

It is contended by the petitioner that the income from the estate is not sufficient to maintain herself and her children in a proper and suitable manner. The evidence shows that she has received something over $1,000 during the year since her mother's death. This is not a sufficient period of time to use as a gauge of what the net income from this estate will be when the executors and trustees have placed the assets on an income-producing basis. However, while this amount of income undoubtedly has necessitated the practice of strict economy on the part of the petitioner to provide food and clothing for herself and children, yet it would seem incredible that the judicious expenditure of this sum should leave the petitioner and her children in the dire poverty indicated by her petition in this proceeding.

The petitioner contends that from the fact her mother was cutting into the principal of her estate for some years prior to her death in maintaining herself and her household an intention should be read into decedent's will that this practice should be continued by her daughter. With this contention I cannot agree. The only provision in the will which would indicate an intention on the part of

the testatrix that the corpus of her estate should be invaded is found in clause sixth which reads as follows:

"*Sixth.* It is my purpose to provide for my daughter, Marie Eugenie Ely Fallon during her life and then for the equal division of my property between her two children, and I earnestly wish that my personal belongings, including jewelry, furniture, glass, silver and linens may be retained and pass as above directed to my granddaughters. But appreciating the uncertainties of human affairs, and that it may become necessary or desirable for the best interests of said beneficiaries that said personal property be sold, then and in that event I authorize such sale to be made from time to time by my Executors and Trustees in their discretion and with the approval of said Marie Eugenie Ely Fallon."

While expressing in this clause a wish that her personal belongings, jewelry, furniture, glass, silver and linens might be retained, the testatrix yet realized that it might become necessary or expedient to dispose of this property and authorized her executors and trustees in such event to sell the same with the approval of the petitioner. Naturally the testatrix had in mind the fact that a considerable share of her estate was represented in this type of non-income-producing property and provided in this way for a conversion should the income from the balance of her estate prove insufficient for her daughter's needs. The approval required of her daughter I believe not to give her daughter an arbitrary power but means rather that the daughter, acting in good faith, and in a co-operative spirit, specify the order of conversion when the necessity therefor should arise.

It is contended by the executors that, if the net income now produced by the estate is insufficient, the jewelry and other effects not needed in the residence should be converted into cash and invested in income-producing securities. With this contention I am heartily in accord and believe that it represents the express intention of the testatrix.

When the income-producing capacity of this estate has been reached and if it is then found to be insufficient for the proper and suitable maintenance of the petitioner and her two children, then I believe an encroachment on principal would be warranted by the language used by the testatrix in the sixth clause of her will. At present, a conversion of this property is " desirable " for the purpose of increasing income; in the future a conversion may become " necessary " to augment the income by using from the funds realized by a sale of this personal property or part of it.

I, therefore, hold, *first*, that, by subdivision 3 of clause first of her will, the testatrix intended that so long as her daughter desired

it her executors and trustees should keep the residence property with necessary furnishings and furniture intact and should keep the same in repair, replacing any fixtures which become obsolete or worn out and should pay the taxes thereon and the ordinary expenses of upkeep thereof; all this to be done from principal and not from income. *Second,* that if the net income from the balance of the estate shall prove insufficient for the maintenance and support of the petitioner and her two daughters and for the maintenance of Wilhelmina Ely Grasshof, in the event the contingency should arise which is provided for in clause third of the will, non-income-producing personal property be converted into income-producing assets as provided in clause sixth of the will; and that, in the event of the income being then insufficient, principal funds may be used to augment income.

It is unnecessary for this court to specify what, if any, changes should be made in the heating plant and plumbing at the residence. The requirements stated by the petitioner would seem to be reasonable and the difficulty seems to have been whether the cost thereof should be borne by the corpus or deducted from the income. As a proper heating plant in this climate is certainly a necessary fixture in a residence, under the above holding, this cost should be paid from the corpus.

Everything that has gone before has dealt with the proceeding brought by the petitioner for a construction. In view of this court's holding as to a proper construction, it is unnecessary to discuss the proceeding brought by the petitioner as guardian of her two children other than to deny the same. The relief sought in the two proceedings is the same, the method of approach only differing.

A decree may be entered in conformity with this decision either upon notice or upon agreement between counsel as to the provisions thereof.