## Kramer's Estate

*Russell J. O'Malley* and *James E. O'Brien,* for exceptant.

*N. H. Cowdred,* of *O'Malley, Harris, Harris & Warren,* for accountant.

MURPHY, P. J., April 28, 1947.—This matter is before the court on exceptions to the third partial account of the Scranton Lackawanna Trust Company, substituted trustee of the estate of Levi H. Kramer, deceased. After hearing thereon the following facts were developed:

Levi H. Kramer, decedent, died February 9, 1920, and at the time of his death was seized of an undivided one-fourth interest in real estate known as 2609-2617 Broadway, New York City, at the corner of 99th Street, improved with a six-story building used as stores on the ground floor and residence quarters on the upper floors. The real estate was subject, at the time of decedent's death, to a mortgage in the amount of $180,000, which contained no amortization clauses and said mortgage is now held by the Dry Dock Savings Institution of New York City, hereinafter referred to as mortgagee, and the unpaid balance amounts to $151,000. The premises are under lease at a rental of $3,000 per month.

The original trustees, Louis N. Kramer, Isadore H. Kramer, and Albert H. Kramer, were brothers of decedent and they were succeeded by the Dime Bank Lincoln Trust Company, and later by the Scranton Lackawanna Trust Company, the present accountant.

Nellie M. Kramer is a mentally incompetent person and the courts of the State of New York appointed Nathan K. Galland and the Commercial National Bank and Trust Company of New York as her committee on February 27, 1932, and they are excepting to the third partial account, previously mentioned.

Paragraph 6 of decedent's will and testament created a testamentary trust for the benefit of desig-

nated sisters and a brother of decedent, including Nellie M. Kramer, exceptant. Subparagraph (d) of paragraph 6, which pertains to the real estate in question, provides as follows:

"One-fifth of such net income to my sister Nellie M. Kramer during the term of her natural life. In the event, however, that my said sister be not living at the time of my death, and she shall have married leaving her surviving lawful issue, then the said net income shall be divided equally among them. If, however, my said sister Nellie M. Kramer shall have died unmarried, then the said net income shall revert to my residuary estate and to be divided equally among the remaining parts."

Paragraph 10 provides as follows:

"Upon the death of my sisters Emma Freeman and Nellie M. Kramer, I direct that the said trust shall cease and that said residuary estate so invested as aforesaid shall be distributed according to the Laws of the State of Pennsylvania as though I had died intestate as to said residuary estate."

The trust estate includes decedent-owned real estate consisting of a one-fourth interest in a lot and building located at 2609-17 Broadway, New York, N. Y., upon which, at decedent's death, there was a mortgage in the amount of $180,000, as previously mentioned, one fourth of which, $45,000, was the proportionate share of this decedent. Personal principal assets in the estate aggregate approximately $125,000.

The exceptions filed to the account cover credits taken in the income account of amortization payments to the Dry Dock Savings Institution on the principal of the mortgage running from April 29, 1944, to September 26, 1946, as well as credits taken in the income account on July 5, 1945, and September 11, 1946, of surplus income paid to Dry Dock Savings Institution.

Said third partial account shows that the Broadway property produced substantial gross rents during the accounting period and that during the same period the net rents therefrom, which were paid to this estate, exceeded $4,000.

Over and above the carrying charges of this property, such as taxes, insurance, repairs, etc., the accountant has taken credit for the payment of interest and payment of substantial principal reductions on the $180,000 mortgage against the property.

The mortgage, held by the Dry Dock Savings Institution, as stated, contained no amortization provisions but by the New York State amortization laws, New York Civil Practice Act, section 1077, (a)-(g), a mortgagee is entitled to have annual amortization payments on the principal debt in amounts varying from one to three percent, otherwise foreclosure proceedings could be instituted, and in addition, recapture the surplus earnings of the property to apply on the mortgage debt.

The mortgagee demanded the various amortization payments of from one to three percent, which the accountant was obliged to pay to prevent foreclosure proceedings, and at least on two occasions legal action was instituted to recapture the excess earnings of the property. The personal assets, previously mentioned, consist of United States savings bonds at two and one-half percent, totaling $59,700; cash amounting to $1,546, and the balance in securities in the approximate amount of $64,000.

Decedent is not a remainderman, nor is she a contigent or potential remainderman, and life tenants and remaindermen and all parties interested were duly served with notice.

Prospective purchasers of said real estate offered as high as $75,000 over and above the mortgage debt or

approximately $255,000, for said real estate. Said offers were not considered adequate.

It is the contention of counsel for exceptant that over and above the carrying charges on the New York real estate, such as taxes, insurance, upkeep, repairs and interest on the mortgage, there remains net rentals from said real estate in the amount of several thousand dollars which should go to life tenants rather than being applied in reducing the principal mortgage debt. These payments, as previously stated, are being made under an order of the New York court where the real estate is situate.

Counsel for exceptant further contends that there is ample personal principal property in this estate, and since the mortgagee demanded payments on account of the principal of said mortgage, these demands should be met without utilizing the net rentals from the mortgaged premises.

There is nothing in the record to indicate that a bond accompanied the mortgage on said New York real estate, and if there is such a bond, whether any action was taken on it against the personal estate of decedent.

The question involved is as follows: Since a portion of the rentals of the trust real estate, over and above the normal carrying charges, taxes, etc., was applied to the mortgage principal and consequently diverted from life tenants, should that portion of the rentals so applied to the mortgage principal be reimbursed to a life tenant from the principal personal assets of a decedent's estate,

The question before this court is of eminent importance; nevertheless, the court is at a loss to find precedence in Pennsylvania. After reviewing cases of other jurisdictions entirely too numerous to enumerate, practically all have adhered to the following principle: When trust property encumbered by a mortgage comes

to a trustee, who holds said property for a life tenant and remainderman, and testator makes no special provision concerning the payment of interest and principal of the mortgage obligation, testator is deemed to have intended that life tenant bear the interest, carrying charges, taxes, etc., and remainderman the principal due on the mortgage.

If this be so the trustee should pay interest installments out of the rentals and cancel the principal of the mortgage debt out of the capital of the trust. Likewise, if the principal of a mortgage has been borne by life tenant out of the rentals, or if the trustee paid a portion of the rentals on the mortgage debt, then life tenant is entitled to repayment of his portion of the rentals, so applied by the trustee on the mortgage debt, out of the capital of the trust.

In 4 Bogert on Trusts and Trustees, 2320, 2321, §802, the following principle is set forth:

"Frequently the trust property as it comes to the trustee who holds for life tenant and remainderman is incumbered by a mortgage. *If the settlor makes no special provision about the payment of interest and principal of this obligation, he is deemed to have intended that the life tenant is to bear the interest charges and the remainderman the principal due on the mortgage.* The trustee should therefore meet interest installments out of current trust income and cancel the principal of the mortgage debt out of the capital of the trust. The life cestui will in this way in effect be bearing the interest charge for his life, either by suffering a deduction from his gross income or by reason of a diminution of the gross income due to the reduction in the size of the trust capital. *If the principal of a mortgage has been borne by an equitable life tenant out of his own funds, or by a trustee for him out of the trust income, repayment out of the capital of the trust should be decreed.*" (Italics supplied.)

And the same author, approaching the question on a different point of view, has this to say:

"If a trustee finds that the trust property is mortgaged, his duty to preserve the trust property imposes upon him the obligation of paying the interest on the mortgage debt as it becomes due and the principal if it becomes due during the life of the trust. The trustee has not personally promised to pay interest or principal and is not personally liable for its payment to the mortgagee. However, a failure to make such payment will render the trust property subject to loss through foreclosure. Consequently there is a duty on the part of the trustee to use trust funds for canceling the interest and principal debts as they become due.

"*Interest on mortgages should ordinarily be paid out of trust income. The principal of mortgages on the trust property should be paid out of trust capital.* This will result in an apportionment of the payment, since the remainderman will have less capital at the end of the life or other temporary interests, and the income beneficiaries will lose the income on the sum which was paid out to discharge the mortgage." (Italics supplied.) 3 Bogert on Trusts and Trustees, 153-155 §603.

Although there are no Pennsylvania decisions before this court on the question involved the Supreme Court of Pennsylvania in Marshall's Estate, 278 Pa. 206, 209, said:

"It is undoubtedly true that a tenant for life, paying a charge on an estate, is prima facie a creditor unless by some expression a contrary intention is indicated. Without such expression he is presumed to have acted in his own interest and for his own benefit. He is under no obligation or duty to make a declaration or do any act demonstrating his intention, and the burden of proof is on those who assert that in paying off the charge he intended to exonerate the estate:

Faulkner v. Daniel, 3 Hare 199, 217; Forbes v. Moffatt, 18 Ves. Jr. 384, 392; Pitt v. Pitt, 22 Beav. 294, 297; Re Pride (1891), 2 Ch. 135, 142; Shrewsbury v. Shrewsbury, 1 Ves. Jr. 227, 233, 234; Burrell v. Egremont, 7 Beav. 205, 226; Redington v. Redington, 1 Ball & B. 131, 140; Patten v. Bond, 60 Law Times R. 583, 585; Gifford v. Fitzhardinge (1899), 2 Ch. 32, 34; Detroit & N. Mich. B. & L. Association v. Oram, 200 Mich. 485, 493; Abney v. Abney, 182 Ala. 213, 218; Todd v. Bank, 173 Ky. 60, 67; Fuller v. Devolld, 144 Mo. Ap. 93, 95; Draper v. Clayton, 87 Neb. 443, 450."

In the Marshall Estate, however, the Supreme Court decided against life tenant because of her signing and joining in a petition asking that the income be applied toward the reduction of the principal of the mortgage in the trust estate.

The Supreme Court, in deciding the Marshall case, held (p. 210):

"Here we have the life tenants joining in a petition asking that twenty per cent of the income (which is all they are interested in) be used *in the reduction of the principal of the mortgage.* The principal of the mortgage cannot be reduced and at the same time kept alive, even though for the benefit of the life tenant as a charge in her favor against the estate. The petition clearly intended the mortgage was to be paid off from income. . . .

"Consent here amounts to an agreement to use a certain portion of their money to repay a loan incurred by them in order that the working capital of the foundry might not be impaired. Appellant is estopped by her own act from now claiming that her share of this income should be considered as a charge against the remainder, and in this it is different from the cases above cited."

We can infer from the Marshall case that had life tenant not so consented she would be a creditor for her portion of the rentals that were applied toward the mortgage principal and be entitled to reimbursement out of the corpus of the trust estate.

Lair's Estate, 38 Cal. App. (2d) 737, 102 P.(2d) 436, is authority for the following principle:

"Where the trust property was subject to a mortgage when it came to the trustee, the interest on it should be paid from trust income, and the principal out of the corpus of the estate."

In In re Estate of Myers, 234 Iowa 502, 12 N.W.(2d) 211, the Supreme Court decided: "That a life tenant has a duty of paying the interest on a mortgage but not the principal."

The courts of New York in Gabler's Will, 140 Misc. 581, 251 N. Y. Supp. 211, held: "That where a testator directed payment of his debts, the installments due on mortgages on lands owned by the testator should be charged to the corpus of the trust estate."

And, in Hafner v. Hafner, 34 Misc. 65, 69 N. Y. Supp. 456, where a testator directed executors to hold his estate in trust and to devote the balance of income, after certain specified annuities, to the discharge of mortgage on the estate, the court, after deciding that the direction for the payment of mortgages was void as a direction for an unlawful accumulation, held that: "The payments on the mortgages having been made for the benefit of the estate should be charged against the trust principal instead of the income from the trust and, accordingly, ordered that the income account should be so corrected."

That the intention of testator to make life tenant the primary object of his bounty, and life tenant is to be favored wherever possible, is the trend of Pennsylvania decisions today; Nirdlinger's Estate, 331 Pa. 135, and Pfromm's Estate, 40 D. & C. 104.

In the instant case the mortgage principal has been reduced approximately $30,000 in 27 years, there being a mortgage principal balance of approximately $150,-000. Were the mortgage to be paid off at the same rate as heretofore, life tenants would be obliged to live 135 years from today in order to receive the net income. Certainly testator was concerned about the life tenants and did not desire that a duty or obligation be placed on them to pay off the mortgage for and in behalf of remaindermen. Testator is presumed to have known what the building realized in rents and the costs of operating said building, and it is only fair to assume that he desired life tenants to be the recipients of the income over and above the normal carrying charges. Otherwise he could have omitted any mention of life tenants entirely in his will and devised the property directly to remaindermen.

Furthermore, the first direction in testator's will was that all his just debts be paid as soon as practicable. Testator's obligation on the mortgage is a just debt of testator. However, it could not have been practicably paid because of testator having only a one-fourth interest in said mortgaged property. Nevertheless, the installments, as they fall due, could be conveniently paid from the corpus of the trust estate.

A life tenant under the law is bound to keep down encumbrances and preserve the property. A life tenant must protect those in remainder. His duty is to pay the interest on the mortgage, taxes, normal carrying charges, etc., and whether the mortgage was created by testator or by a prior owner makes no difference. The Pennsylvania courts have held that where a mortgaged property in trust is sold out of the principal of the estate, the mortgage and the interest on the mortgage, prior to testator's death, is payable out of the principal of the estate and the interest accruing after the death of testator is payable to life tenant:

Ward's Estate, 3 Pa. C. C. 224, Jewell's Estate, 1 W. N. C. 404; McDonald v. Heylin, 4 Phila. 73; Estate of Schurr minors, 37 L. I. 194.

In the instant case the real estate has not been sold, nor is there an immediate contemplation of selling same. If it were sold, as under the immediate previous decisions cited, the fund realized would be part of the principal corpus of the trust and from the fund realized the mortgage balance would be paid, and the interest on the amount realized over and above the mortgage debt would be payable to life tenants.

As previously mentioned, an offer of $255,000 for the real estate in question was rejected. Consequently, we can presume that the building is worth in excess of $255,000. But on the basis of $255,000 testator's one-fourth interest in said real estate amounts to $63,750. The balance due on the mortgage, as previously cited, amounts to $151,000, and the estate's liability being one fourth or $37,750. If the property were sold life tenants would be entitled to the interest on the difference between the amount realized and the mortgage debt, which in this case would be in excess of $26,000.

No court with propriety could direct that life tenants are not entitled to the interest on the fund realized from the sale of a premises in trust over and above the mortgage debt, and it should follow that a court would be unreasonable and unequitable, were it to decide that life tenants be not entitled to the rentals over and above the normal carrying charges. Furthermore, let us assume that the mortgagee demanded accelerated mortgage reductions in an amount equal to, or greater, than all the net income of this estate, both from the realty and from the personalty. If the accountant's position is correct, life tenants will then receive no income whatever. We believe that such a conclusion is in conflict not only with the intention of testator but also with the law and common sense.

In the case at bar, however, the accountant seeks to deprive life tenant of the benefits received from productive real estate and would divert the profits received from the real estate toward the payment of principal mortgage obligations.

It would be a simple matter for the accountant to meet the periodic demands of the mortgagee for the reduction of the mortgage principal by paying from the personal principal assets such payments as were from time to time required by the mortgagee, thereby making available for life tenant the net rental income which, under the terms of testator's will, are payable to the life tenants. By making such payments from the personal principal, the accountant is not lessening the amount of the remainder ultimately payable to remaindermen for the obvious reason that where personal principal assets are used to pay a mortgage upon trust real estate, the equity in the principal realty assets is correspondingly increased without burdening life tenant unfairly and without the responsibility of meeting the payment of the mortgage obligation out of rental income.

The accountant seeks to justify its action in applying rental income on the mortgage principal on the ground that the mortgagee brought proceedings in the court of New York which compelled the payment of certain of the net rentals on account of the mortgage principal. The accountant further contends that the mortgaged premises constituted unproductive real estate and therefore justified the accountant in applying rents toward mortgage principal reduction. These contentions are not well taken, since there are abundant personal principal funds in the principal corpus of the estate to meet the principal mortgage obligations, and secondly, as heretofore stated and as set out in accountant's account, the property is definitely productive.

Exceptant's Exhibit No. 1 shows that during the accounting period the net rents paid to this estate

were $4,024.67, or the net rental profit of the entire property, $16,098.68.

Section 11 of the Uniform Principal and Income Act of May 3, 1945, P. L. 416, is not applicable since the real estate in question during the periods accounted for has earned in excess of one percent per annum of its fair inventory value.

Exceptant's contention that section 12 (Expenses; Trust Estates) of the Uniform Principal and Income Act applies, is not well taken, there being no provision in said section that authorizes a court to decree that the mortgage debt be paid out of the principal or income or apportioned between income and principal. But reasoning reciprocally, since said section authorizes ordinary expenses to be paid out of the principal or income or apportioned between principal and income, certainly the mortgage principal is not an ordinary expense and consequently could definitely be paid out of principal.

However, subsection 3 of section 3 of the Uniform Principal and Income Act provides:

"All income after *payment of expenses properly chargeable to it shall be paid and delivered to the tenant or retained by him if already in his possession* or held for accumulation where legally so directed by the terms of the instrument or transaction by which the principal was established; while the principal shall be held for ultimate distribution as determined by the terms of the instrument or transaction by which it was established or by law." (Italics supplied.)

The mortgage principal, as we see it, is not properly chargeable against the income of the mortgaged premises.

The owner of a life interest in property is not compelled to pay the principal sum or debt of an encumbrance when it becomes due or thereafter as between himself and the owner of a future interest, and it is a general rule that if a life tenant, in order to pre-

serve the estate, pays off an encumbrance upon the fee or estate property, whether the encumbrance is a mortgage, lien, charge, or other type of encumbrance, he is entitled to reimbursement from the owners of future interests such as reversioners or remaindermen, to the extent of their interest in the property which had been subject to the encumbrance.

It must be noted, however, that in cases where life tenant is entitled to reimbursement from remaindermen by reason of having paid mortgage principal, such payments are made only where there is insufficient principal personal estate with which to pay the mortgage principal. In the instant estate there are abundant principal personal funds with which to pay the mortgage amortization payments or, for that matter, the full amount of the mortgage principal.

It would be folly, in the case at bar, to have life tenants pay off the mortgage encumbrances and then look to the remaindermen for reimbursement since the principal personal assets and the real estate in question, under paragraph 10 of the will, pass to remaindermen after the death of exceptant and one other life tenant.

This court is of the opinion that a life tenant is entitled to receive accumulated rents, profits and earnings, except where it is necessary to preserve the intact value of the principal. In the case before us the paying of the mortgage installments out of the personal principal corpus of the estate would diminish the personal principal assets but enhance the value of the real estate in question. Since both the personal principal assets and the real estate in question make up the trust fund the principal of the trust fund will be kept intact. In other words, the trustees, in paying off the mortgage principal, would have simply used the assets to extinguish pro tanto a liability, but the net worth of the trust would remain unchanged. If life tenants were obliged to pay the mortgage installments

out of the rents over and above the normal carrying charges, and thereby enhance the value of the trust real estate, and the personal principal assets of the trust fund kept intact, the remaindermen would be unwarrantedly favored.

Now, therefore, after carefully reviewing the testimony, it is ordered, directed and decreed that a refund be made to exceptant, from the principal personal property fund, in an amount equal to the sum she would have received during the period covered by the account excepted to, had not the rentals from the real estate, over and above the normal carrying charges, been applied on the principal of the mortgage. The third partial account of the trustees is confirmed finally.